GEORGE H. HUDSON, Respondent, *v.* FRANK C. SWAN et al., Appellants.

Replevin will not lie by one tenant in common of a chattel against another for taking the chattel, and if one of them sells his interest to a third party he has the right to deliver the chattel to the purchaser, and neither he nor any one assisting him in so doing is liable to an action.

Where, in the complaint and upon the trial of an action to recover possession of personal property, the plaintiff claims as sole owner, he must stand or fall upon that claim, and cannot, if his alleged title turns out to be invalid as against the true owner, fall back upon an alleged lien. The claim of title is a waiver of any lien; and, in any event, before the lien can be restored, the false claim of title must be abandoned, the title of the true owner conceded and the claim reduced to one of lien.

(Argued December 1, 1880; decided January 25, 1881.)

APPEAL from judgment of the General Term of the City Court of Brooklyn, entered upon an order made the fourth Monday of September, 1879, which affirmed a judgment in favor of plaintiff, entered upon a verdict and affirmed an order denying a motion for a new trial.

The nature of the action and the facts appear sufficiently in the opinion.

*John Reynolds* for appellants. A tenant in common, or joint tenant or partner, cannot maintain replevin against his co-tenant, or copartner, for taking the common property. (Morris on Replevin [3d ed.], 125; *Wilson* v. *Gray*, 8 Watts, 35; *Wright* v. *Bennett*, 3 Barb. 451; *Rogers* v. *Arnold*, 12 Wend. 30; *Russell* v. *Allen*, 13 N. Y. 173; *Davis* v. *Lottich*, 46 id. 393; *King* v. *Phillips*, 1 Lans. 428; *Jones* v. *Brown*, 25 L. J. Exch. 345; *Barnes* v. *Bartlett*, 15 Pick. 75.) Any act or declaration inconsistent with the assertion of a lien extinguishes the right of lien. (*Morgan* v. *Congdon*, 4 N. Y. 553; *Whitaker* v. *Sumner*, 37 id. 405; *Harrison* v. *Scott*, 5 Moore's P. C. 357; Whitaker on Liens, 75; *Coburn* v. *Kerswell*, 35 Me. 126; *Bean* v. *Bolton*, 3 Phila. 93; *Jones* v. *Tarleton*, 9 M. & W. 675; *Bradley* v. *Cole*, 6 Hun, 660; *Wingard* v. *Banning*, 39 Cal. 543; *Mexal* v. *Dearborn*, 12 Gray [Mass.], 336; *Picquet* v. *McKay*, 2 Blackf. [Ind.] 465; *Gillespie* v. *Goddard*, 1 Pittsb. 310; *Evans* v. *Warren*, 122 Mass. 303; *Jacobs* v. *Latour*, 5 Bing. 130; *Parks* v. *Hall*, 2 Pick. 206; *Holbrook* v. *Wight*, 24 Wend. 179; *Smith* v. *Acker*, 23 id. 668, 669; *Allen* v. *Judson*, 71 N. Y. 79; 3 Parsons on Contracts, 238 [6th ed.]; 2 id. 207.) The taking being at the request of Clemence, he was the real party defendant, and is bound to indemnify. (*People* v. *Auditors*, 74 N. Y. 313; *Davis* v. *Lottich*, 46 id. 393, 397, 400.) As to Clemence, Paige and Gilmore, the lien was a secret lien, and if plaintiff wished to preserve it he was bound to put himself on his lien at once. (*Mexal* v. *Dearborn*, 12 Gray [Mass.], 336.) Plaintiff, by pleading full ownership, obviates any necessity there might have been of a tender or demand before the taking. (*Newell* v. *Newell*, 34 Miss. 400; *Thatcher* v. *Harlan*, 2 Houston [Del.], 195; *Perkins* v. *Barnes*, 3 Nev. 557; *Homan* v. *Laboo*, 1 Neb. 204.) If it should be conceded that plaintiff had a valid right of lien which had never been abandoned, he could not recover on the ground of lien. In this form of action the

complaint should set forth all the particulars of the alleged lien. (Morris on Replevin [ed. of 1878], 148 ; *Curtis* v. *Jones*, 3 Den. 590 ; *Gillespie* v. *Goddard*, 1 Pittsb. 310, 311 ; *Depew* v. *Leal*, 2 Abb. 135 ; *Schofield* v. *Whitelegge*, 49 N. Y. 259 ; *Pattison* v. *Adams*, 7 Hill, 126 ; *Wood* v. *Orser*, 25 N. Y. 348.) Plaintiff could not have set up any lien in reply to our defense had the court expressly granted him leave to do so. (*Hart* v. *Fitzgerald*, 2 Mass. 511.) The claim of lien is inconsistent with the claim of sole ownership. (3 Parsons on Contracts, 234 ; Ewell's Evans' Agency [ed. 1879], marg. p. 362 ; *McFarland* v. *Wheeler*, 26 Wend. 472 ; *Jordan* v. *Shoe and Leather Bk.*, 74 N. Y. 473 ; *Palmer* v. *Lorillard*, 16 Johns. 352–354 ; *Arnold* v. *Angell*, 62 N. Y. 508 ; *Schaefer* v. *Henkel*, 75 id. 385 ; *Hollister* v. *Engelhardt*, 11 Hun, 446 ; *Natl. Trust Co.* v. *Gleason*, 77 N. Y. 403, 404, 406 and 408.) A party cannot so frame his pleading as that, if he fails in his attempt to sustain it, he can fall back and get inconsistent relief. (*Maxwell* v. *Farnam*, 7 How. 236.) *A fortiori*, he cannot get inconsistent relief where he does not even frame his pleading for it, as here. (*Gillespie* v. *Goddard*, 1 Pittsb. App. 311 ; *Boynton* v. *Page*, 13 Wend. 431 ; *Chambers* v. *Hunt*, 18 N. J. L. 345 ; *Bemas* v. *Beekman*, 3 Wend. 667.) Where a special property man recovers in replevin for a taking by an owner, his recovery is limited to the amount of his special property. (*Allen* v. *Judson*, 71 N. Y. 77 ; *Wingard* v. *Banning*, 39 Cal. 549 ; *Ingersoll* v. *Van Bokkelin*, 7 Cow. 680, 681 ; *Spoor* v. *Hollard*, 8 Wend. 445 ; *Schley* v. *Lyon*, 6 Ga. 530 ; *Ullman* v. *Barnard*, 7 Gray, 554 ; *Dilworth* v. *McKelvey*, 30 Mo. 149 ; *Seaman* v. *Luce*, 23 Barb. 254 ; *Russell* v. *Butterfield*, 21 Wend. 302 ; *Fitzhugh* v. *Winan*, 9 N. Y. 565 ; Wells on Replevin, § 111 ; *Wilson* v. *Reed*, 3 Johns. 178 ; *Butler* v. *Reynolds*, 3 T. & C. 244 ; *People* v. *Auditors*, 74 N. Y. 313 ; *Chambers* v. *Hunt*, 18 N. J. L. 343 ; *Hart* v. *Fitzgerald*, 2 Mass. 512 ; *Konigsburg* v. *Launitz*, 1 E. D. Smith, 217 ; *Russell* v. *Allen*, 13 N. Y. 173 ; *Collier* v. *Yearwood*, 5 J. Baxter [Tenn.] ; *Walker* v. *Spring*, 5 Hun, 107 ; *Azel* v. *Betz*, 2 E. D. Smith,

191, 196; *King* v. *Phillips*, 1 Lans. 428, 429; 1 Greenleaf's Cruise, 872; 4 Kent's Com. 370; *Jackson* v. *Tibbetts*, 9 Cow. 252; *Reynolds* v. *McCormick*, 62 Ill. 412.) If two persons are tenants in common of a horse or other personal chattel, each has an equal right to the possession and use thereof; and each can sell only his own undivided share thereof. (*King* v. *Phillips*, 1 Lans. 428, 429; Littleton, § 323; *Jones* v. *Brown*, 25 L. J. [Exch.] 345; *Kindy* v. *Green*, 32 Mich. 310; *Barnes* v. *Bartlett*, 15 Pick. 71; *Bliss* v. *Johnson*, 73 N. Y. 534; *Wood* v. *Phillips*, 43 id. 156; *Smith* v. *Orser*, 42 id. 137; *Arthur* v. *Griswold*, 55 id. 408; *Erber* v. *Lorillard*, 19 id. 303, 305; *Harrison* v. *McIntosh*, 1 Johns. 380; 1 Greenleaf on Evidence, § 50.)

*Nathaniel C. Moak* for respondent. A lien may exist and be created by express contract, in any case, when the parties choose expressly to stipulate for it. (Wells on Replevin, § 167; Whittaker on Liens [1st Am. ed.], 27, 36, marginal pages; *Chapman* v. *Allen*, Cro. Charles, 271; *Kirkman* v. *Shawcross*, 6 Term R. 14; *Rushforth* v. *Hadfield*, 6 East, 518; *Newton* v. *Gardner*, 24 Wis. 232, 233, 234; *Corbett* v. *Nelson*, 53 Penn. St. 322, 325–6, 330; *Baker* v. *Hoag*, 7 Barb. 113, 117–19; *Rich* v. *Ryder*, 105 Mass. 306.) An oral agreement for such a lien, accompanied by possession, is valid between the parties as a chattel mortgage. (*Husted* v. *Ingraham*, 75 N. Y. 257; *Bardwell* v. *Roberts*, 66 Barb. 433, 436; *Ferguson* v. *Union Furnace Co.*, 9 Wend. 345; *Bank* v. *Jones*, 4 N. Y. 497; *Arnold* v. *Morris*, 7 Daly, 498, 506; *Pinch* v. *Anthony*, 8 Allen, 536.) In an action of replevin by one tenant in common against another, where he is entitled to possession, he may recover the full value of the property. He has a right to restoration of possession of the entire property. (*Russell* v. *Allen*, 13 N. Y. 173, 179, 180; *Witham* v. *Witham*, 57 Me. 447, 449; *Ingraham* v. *Hammond*, 1 Hill, 353, 354; *Johnson* v. *Carnley*, 10 N. Y. 570, 576–579; *Allen* v. *Judson*, 71 id. 77; *Fitzhugh* v. *Winan*, 9 id. 559; Sedgwick on Damages, 586, 585, note 4; Field on Damages, § 837.) Conduct based

upon a mistake or upon fraud does not affect a party's rights, if, as soon as the facts are known to him, he properly asserts his real and true rights, particularly if the other party have done nothing in consequence of any thing said or done by the claimant. (*Warner* v. *Blakeman*, 36 Barb. 501; *Day* v. *Roth*, 18 N. Y. 456; *Allen* v. *Spencer*, 1 Edm. 117.) No one is held to have waived a right, unless it appears he knew his rights, or the facts affecting them, and, with such knowledge, intended a waiver of them. (*Estate of Bank*, 60 Penn. St. 471, 479; *Everett* v. *Coffin*, 6 Wend. 603; *Buckle* v. *Handy*, 2 Miles [Pa.], 449; *White* v. *Gainer*, 2 Bing. 23; 9 Eng. Com. Law; 1 Schouler on Personal Property, 496.)

RAPALLO, J. This action was in the nature of replevin, for taking a horse. The plaintiff, by his complaint, claimed the entire title to the horse, alleging that he was the owner and entitled to possession thereof, and that it was of the value of $2,500, and that the three defendants wrongfully took the horse from him and have ever since detained it; and he demands judgment for the return of the horse or its said value.

The defendants, by their answers, justify the taking, on the ground that the defendant Swan, being half owner of the horse and tenant in common thereof with the plaintiff, sold his half interest to the defendant Clemence, and that the taking complained of consisted of the delivery of the horse to Clemence in pursuance of such sale, the action of the defendant Paige in the matter having been had by authority and at the request of the defendants Swan and Clemence.

This answer undoubtedly disclosed a good defense, if true, as it is the settled law and is conceded in the case, that replevin will not lie by one tenant in common of a chattel against another for taking the chattel, and if one of them sells his interest to a third party he has the right to deliver the chattel to the purchaser, and neither he, nor any one assisting him in so doing, is liable to an action. The authorities cited in the briefs fully establish this point.

The parties went to trial on the issue thus raised, and the

plaintiff, to maintain his title, gave evidence to the effect that he did become half owner and tenant in common of the horse with the defendant Swan, and that afterward, and before the sale to Clemence, he purchased the interest of the defendant Swan, and thus became sole owner. This sale of Swan's one-half was denied by the defendants, and was the main fact in issue on the trial, and the circumstances, as detailed in the evidence on the part of the plaintiff, were, in substance, without following the precise order of proof, that before the purchase by the plaintiff of any interest in the horse, George Hudson, plaintiff's father, and Swan were owners and tenants in common thereof, and it was agreed that plaintiff should take the horse and trot him. That Swan and plaintiff's father were to bear one-half of whatever he lost, and were each to get a third of whatever he won, and that plaintiff was to get a third and hold the horse for its expenses, if any, until they were paid. That afterward, in April, 1878, plaintiff purchased his father's interest, and held possession of the horse, and incurred expenses in keeping him, and other expenses which amounted, over and above winnings or earnings, to $794.71, one-half of which sum, viz., $397.36, the plaintiff claimed became due him from Swan, and thereupon, in January, 1879, plaintiff's father, as agent of Swan, sold Swan's interest in the horse to plaintiff for $700, which was paid by plaintiff, to his father as agent for Swan, partly in cash, and partly by canceling plaintiff's bill against Swan of $397.36 for expenses.

The defendants disputed the authority of plaintiff's father to make this sale of Swan's interest, and Swan testified that he never gave such authority or ratified the sale, and there was a direct conflict in the evidence on this point. The question was submitted to the jury, and their finding establishes that no such sale was made and that Swan continued half owner and tenant in common down to the time of the sale of Clemence.

Throughout the trial it was assumed that the plaintiff's right to recover depended upon his claim of sole ownership. A motion for a nonsuit was made, on the argument of which it was stated by the court that the case turned upon the question

whether the plaintiff was sole owner, and no claim was then made that the right to a recovery could rest upon any other ground.

In summing up the case, however, the counsel for the plaintiff for the first time suggested that even if the plaintiff was not the sole owner, he was entitled to recover by virtue of a lien on the horse for his expenses, the defendant not having paid the bill when he took the horse.

The defendants' counsel thereupon insisted that there was no question of lien in the case, and the court replied that it had not noticed that any such question was raised ·by the testimony, but on being referred to the testimony of the plaintiff as to the agreement that he was to hold the horse for his expenses, the court held that the question of lien was in the case. Thereupon, by leave of the court, defendants' counsel recalled the defendant Swan, who flatly denied the plaintiff's statements in respect to such agreement, or any agreement, to trot the horse or to pay expenses for so doing. The court thereupon submitted to the jury the question whether the plaintiff had proved his alleged sole ownership, and the further question whether, if Swan still remained half owner, he had made the agreement as to the expenses, testified to by the plaintiff, and charged that if the jury found against the plaintiff on the first question, yet, if they found that that agreement was made, then the plaintiff had a lien upon the horse, and had a right to retain it, whether he had bought Swan's half interest or not. This part of the charge was excepted to. The judge then charged that if the jury found for the plaintiff on either of those questions, they must say they found for the plaintiff; instructed them that if they found that defendant Swan was half owner, then they must ascertain whether there was a lien by agreement, and if there was they must assess the value of the property at the amount of that lien, which was half the balance of the bill. To this instruction exception was taken.

The jury having returned a verdict for the plaintiff for $397.36, and assessing the value of the property at $500, being half the value of the horse, the judge instructed them to

amend it by assessing the value of the property at half the bill
of expenses, viz., $397, and half the value of the horse, being
together $897.   To this instruction the counsel for defendants
excepted, and especially to that part which directed the jury
to find the value of the lien, and the counsel for defendant
Swan took a special exception on his behalf on the ground
that the verdict showed that the jury had found the question
of total ownership adversely to the plaintiff, and in this excep-
tion the counsel for the other defendant appears to have joined,
and also demanded that the jury be polled.   The court there-
upon instructed the jury as matter of law that in assessing the
value of the property they must take half what they found to
be the amount of the bill and add to that half the value of the
horse.   To this the counsel for all the defendants excepted.

The counsel for the appellants claimed that under the plead-
ings in this action no recovery could be had without establish-
ing the allegation that the plaintiff was owner of the property,
and that, being defeated on that issue, he could not recover on
the ground that he had shown a lien thereon.   No objection
was however made at the trial upon that ground and it is hardly
worth while to consider it as a much more important question
is presented which if determined in the appellant's favor is de-
cisive of the case.

It does not appear that the plaintiff at any time until the
summing up of the case asserted any lien upon the property,
but, on the contrary, claimed to be sole owner, which claim is
inconsistent with that of a lienor, inasmuch as one cannot have
a lien upon his own property.   This point is we think pre-
sented by the exceptions taken.   The charge that if the plaint-
iff failed to establish his claim as owner he might still recover
if the jury found he had a lien, was excepted to, and we think
this exception raises the point.   The true ground of this ex-
ception was not at first stated, but as it was an objection which
could not have been obviated, it was hardly necessary to state
any ground therefor.   The true ground, however, was very
nearly stated at the close of the case and before the verdict
was recorded, and was in substance that the jury having found

adversely to the plaintiff on his claim of sole ownership, he could not recover as having a lien.

The validity of this objection is well sustained by authority. A claim of ownership has frequently been held fatal to a claim of· lien. This is not merely a question of pleading. If the pleadings in this case had been amended, and all the facts which were proven had been set out in detail, the result would have been the same. The plaintiff came into court claiming to be sole owner of the property. He testified to a purchase thereof and payment of the consideration, part of which was the extinguishment of the very claim for which he is by the verdict and judgment declared entitled to a lien. At no stage of the proceedings did he concede the defendants' title and limit his claim to one as lienor. No opportunity was given to the defendants to discharge any such lien. The plaintiff denied its existence, by claiming as sole owner, and down to the last moment maintained that claim, and submitted it to the jury, who found against him. He must, in this action at least, stand or fall upon that claim, and we think it was error to instruct the jury that he could fall back upon his alleged lien. Many of the authorities hold that such a claim absolutely extinguishes a right of lien, and that it cannot be revived. But assuming that the General Term were right in holding that where the claim has been made under a mistake of fact, as for instance reliance upon the supposed authority of an agent, it may be corrected, and the lien restored, yet, before that can be done, the false claim of title must at all events be abandoned, and the title of the true owner conceded and the claim reduced to one of lien. This case contains no such feature; the plaintiff stood throughout on his alleged title, alleged no mistake, but, on the contrary, testified positively and distinctly to a ratification by the defendant Swan in person of the sale of his interest to the plaintiff, by plaintiff's father as agent; and the truth of this statement was one of the matters submitted to the decision of the jury. The judgment may have done substantial justice in the case, but it is impossible to sustain it without disregarding the rule that a claim of ownership is incon-

sistent with a claim of lien, and that both cannot be asserted at the same time. That a claim of ownership waives the lien, even if one exists, and that consequently one who makes a claim of ownership as against the true owner, cannot, if his alleged title turns out to be unfounded, fall back upon his lien. (*Everett* v. *Saltus*, 15 Wend. 474, 478; *S. C.*, 20 Wend. 267; *Holbrook* v. *Wight*, 24 id. 169, 179.) The rule is most frequently applied in cases where a defendant who claims to retain property fails to set up his lien, or makes some claim, or does some act inconsistent therewith. But it is equally applicable to a plaintiff who, as against one who turns out to have a better title than himself, claims as owner, when he has nothing but a lien. The rule was so applied in *Mexal* v. *Dearborn* (12 Gray, 336), and the plaintiff was adjudged to have precluded himself from recovering by virtue of his lien.

There are various other questions in the case which we have not deemed it necessary to consider, the point discussed requiring a reversal.

The judgment should be reversed and a new trial ordered, costs to abide the event.

All concur, except ANDREWS, J., not voting.

Judgment reversed.