[No. 15656. In Bank.—January 30, 1896.]

THOMAS H. WILLIAMS, RESPONDENT, v. R. P. ASHE, APPELLANT.

PLEDGE—TRANSFER BY PLEDGEE—BONA FIDE PURCHASER — REPLEVIN — FINDING OF QUALIFIED INTEREST — STATEMENT—PRESUMPTION UPON APPEAL.—Although a pledgee of personal property, having bills of sale absolute in form, can pass a full title to a *bona fide* purchaser thereof for value without notice of the pledge; yet where, in an action of claim and delivery for such property by the transferee against the original owner, the jury has found that the plaintiff has only a qualified inter-est in the property to the extent of the indebtedness of the defendant to the pledgee, it will be presumed upon appeal taken by the defendant, that the evidence warranting a finding that the sale did not pass abso-lute title to the plaintiff, was omitted from the statement.

ID.—ADVERSE CLAIM BY LIENHOLDERS—LOSS OF LIEN—RULE INAPPLICA-BLE TO PLEDGEE—RIGHT OF PURCHASER FROM PLEDGEE.—As a general rule, a lienholder who refuses upon proper demand to deliver property without setting up his lien thereon, or who bases his refusal upon a claim other than that of lien, waives his right to claim a lien after action commenced; and if one having a lien claims absolute ownership in a replevin suit his lien is lost, and he cannot claim any rights as a lienor, unless his claim is honestly and mistakenly pressed, in which case he may have his lien upon abandoning the false claim of ownership; but the general rule as to the waiver or loss of lien by a claim of ownership does not apply in the case of the pledgee, who may sell or assign either the property or his interest in the pledge to a *bona fide* purchaser, who will be allowed to hold property until the extinguishment of the origi-nal obligation, as a transferee of the rights of the pledgee.

ID.—COMPLAINT IN REPLEVIN — CLAIM OF OWNERSHIP — SUFFICIENCY OF PLEADING.—A complaint in replevin which alleges ownership and pos-session of the property claimed on and after a specified date, though it is insufficient as against a special demurrer, in not alleging ownership at the commencement of the action in specific terms, is not subject to a general demurrer, it being by fair intendment implied from the com-plaint that the plaintiff claimed ownership and right of possession at the time of the commencement of the action.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order denying a new trial. CHARLES W. SLACK, Judge.

The facts are stated in the opinion of the court.

*Gaston M. Ashe,* and *Ryland B. Wallace,* for Appellant.

The plaintiff was not entitled to recover upon a ground not claimed in the complaint. He claimed

absolute ownership, and was not entitled to recover as a lienholder. (*Sigourney* v. *Zellerbach*, 55 Cal. 440; *Heinlen* v. *Heilbron*, 71 Cal. 557; *Burke* v. *Levy*, 68 Cal. 32; *Mercier* v. *Lewis*, 39 Cal. 532; Coffey on Replevin, sec. 601.) Plaintiff did not own the debts secured by the pledge, and cannot enforce the lien. (*Van Eman* v. *Stanchfield*, 13 Minn. 75; Jones on Pledges, sec. 419.) The complaint is insufficient in not alleging ownership at the time of the commencement of the action. (*Affierbach* v. *McGovern*, 79 Cal. 268; *Fredericks* v. *Tracy*, 98 Cal. 658.) Any lien was waived by the claim of absolute ownership. (*Lehmann* v. *Schmidt*, 87 Cal. 21; *Sutton* v. *Stephan*, 101 Cal. 545; *Hudson* v. *Swan*, 83 N. Y. 552, 559; Wells on Replevin, sec. 381.)

*F. C. Coogan*, and *W. W. Foote*, for Respondent.

The judgment is sufficiently supported by the pleadings, including the answer; and it is not necessary that it be supported by the complaint solely. (*Gregory* v. *Nelson*, 41 Cal. 278; *Swift* v. *Muygridge*, 8 Cal. 445; *Gates* v. *Salmon*, 46 Cal. 362–77; *Lane* v. *Gluckauf*, 28 Cal. 289; 87 Am. Dec. 121; Code Civ. Proc., sec. 580; *Gimmy* v. *Gimmy*, 22 Cal. 633–35; *Corcoran* v. *Doll*, 32 Cal. 83, 88.) A pledgee may transfer whatever interest he has in the pledged property, and a purchaser from him succeeds to his rights. (*Bullard* v. *Billings*, 2 Vt. 309, 313; *Belden* v. *Perkins*, 78 Ill. 449–54; *Talty* v. *Freedman's etc. Co.*, 93 U. S. 321, 324, 325; *Lewis* v. *Mott*, 36 N. Y. 395; Story on Bailments, sec. 327; *Dewey* v. *Bowman*, 8 Cal. 145; 21 Am. & Eng. Ency. of Law, 571, 572; Tiedeman on Sales, sec. 316; *Jarvis* v. *Rogers*, 15 Mass. 389, 408, 409; *Donald* v. *Suckling*, L. R. 1 Q. B. 585, 610–20; *Halliday* v. *Holgate*, L. R. 3 Ex. 299; *Belden* v. *Perkins, supra;* 5 Wait's Actions and Defenses, 175; Civ. Code, sec. 1083; *Greig* v. *Riordan*, 99 Cal. 316, 323; *Hughes* v. *Davis*, 40 Cal. 117.)

THE COURT.—Appeals from the judgment in an action of claim and delivery and from the order denying a new

trial. The action was for the recovery of certain race horses, or their value in case a delivery could not be made, the horses having been taken by defendant from the possession of the plaintiff after the sale of them to him by one Kelly.

The defendant denied the allegations of the complaint, and averred that he was the owner of the horses, and that he was indebted to one M. J. Kelly in the sum of four thousand seven hundred and twenty-one dollars and fifty cents. To secure this indebtedness he executed to Kelly bills of sale of the horses, which bills of sale, absolute in form, were understood by defendant and Kelly to be and were in fact mere evidences of a pledge of the horses as security for the debt; Kelly thereafter wrongfully and without notice to defendant executed a bill of sale of the horses to plaintiff. Plaintiff took possession of the horses from Kelly, without payment of any consideration and with full knowledge of the transaction between Kelly and defendant. Defendant tendered to Kelly and to plaintiff the amount of the said indebtedness. Kelly refused to accept it, as did plaintiff, the latter claiming absolute ownership of the horses. These allegations are set forth in the answer, as matter of defense, as the basis of a counterclaim, and by way of cross-complaint.

The evidence of the principal witnesses, more or less corroborated, amounted about to this. Defendant testified, as he had pleaded, that the bills of sale were and were understood to be only pledges of the horses to Kelly as security. Kelly testified that originally he had held the horses in pledge, but that becoming dissatisfied with this arrangement, and being about to leave defendant's employ, he had insisted upon receiving and had received the horses and bills of sale therefor in payment of defendant's debt to him, the defendant being unable to pay him the money, and that he represented to plaintiff before plaintiff purchased the horses from him that his title to them was perfect. Plaintiff testified that he bought the horses after these represen-

tations in good faith, paying therefor over four thousand
dollars, and owing thereon nearly two thousand dollars
more.

The court instructed the jury that as they determined
upon the evidence so should they render their verdict,
1. For plaintiff as the owner of the horses, if they found
that the bills of sale from Ashe to Kelly were absolute;
2. For plaintiff as having an interest in and a lien upon
the horses to the extent of Ashe's indebtedness to Kelly,
if they found that Kelly was merely a pledgee, and that
the transaction between Williams and Kelly was had
with knowledge by Williams of Kelly's position; and, 3.
For defendant, fixing the amount of any damages he
might have sustained, if in their opinion he was entitled
to such a verdict.

The jury returned a verdict for plaintiff for the return
of the property, and found "the value of his interest in
said property to be the sum of four thousand nine hun-
dred and nine dollars and seventy-four cents." The
judgment entered conformed to the verdict, and decreed
a return of the horses and a lien upon them for the
sum named.

The jury thus found that Kelly was merely a pledgee
of the property in question and not the owner; that
Ashe was the owner, but that Williams had a lien upon
the horses for the amount of the indebtedness owed by
Ashe to Kelly, or, in other words, that Williams had
succeeded to Kelly's interest as pledgee.

As the corroborated evidence of Kelly was that he
was the absolute owner of the horses, and so represented
to Williams when the latter purchased from him; and,
as Williams' testimony was that he purchased after due
inquiry and upon these representations—in view of the
fact that there is no evidence in the record to charge
Williams with knowledge that Kelly was a mere pledgee,
and in view of the further fact that Kelly, with posses-
sion of the horses under bills of sale from Ashe abso-
lute in form, was thus, by Ashe's acts, enabled to hold
himself out to the world as the owner of them, it is not

easy to see how the jury could have arrived at any other conclusion than that Williams had acquired full title. This, of course, would have been the result to one purchasing under such circumstances in good faith and for value. (*McNeil* v. *Tenth Nat. Bank*, 46 N. Y. 325; 7 Am. Rep. 341; *Weirick* v. *Mahoning etc. Bank*, 16 Ohio St. 304; *Fullerton* v. *Sturges*, 4 Ohio St. 529; *Smith* v. *Clews*, 114 N. Y. 190; 11 Am. St. Rep. 627.)    But as Williams is not attacking the judgment, it may be assumed that the evidence warranting the finding that the sale did not vest absolute title in him was omitted from the statement.

The essential question thus presented is whether, under the pleadings and proofs, such a judgment can be upheld.

Williams, it is to be remembered, is suing primarily for the recovery of the possession of the horses, and is basing his claim upon an absolute purchase of them from Kelly.   Kelly insists that he was the owner, and sold the horses (and not any pledgee's interest in them) to Williams; that Ashe's debt to him had been completely extinguished, and that the relation of creditor and debtor did not exist between them at the time he made the sale.   Ashe, upon the other hand, has the horses in possession, and asserts that Kelly was but a pledgee; and having sold contrary to his rights as pledgee, having repudiated the pledge and asserted ownership, in short, having made a wrongful conversion of the property, the lien is extinguished, and he is entitled to retain possession against both of them.

So far as concerns the rights of one who has a mere lien as distinguished from one who claims as pledgee, the question has been answered repeatedly.    It is the general rule that a lienholder who refuses upon proper demand to deliver property without setting up his lien thereon, or who bases his refusal upon a claim other than that of lien, waives his right to claim a lien after action commenced.    It is so held in this state by the cases of *Lehmann* v. *Schmidt*, 87 Cal. 15, and *Sutton* v.

*Stephan,* 101 Cal. 545, and from the number and uniformity of the authorities examined, it may with safety be said that this rule is universal. Section 2910 of the Civil Code enunciates the same principle.

It is also the rule that, if one having but a lien is sued in replevin, and answers claiming absolute ownership, he will not be permitted upon the trial to assert any right as lienor. His lien is absolutely lost. (*Mexal* v. *Dearborn,* 12 Gray, 336; *Tuthill* v. *Skidmore,* 124 N. Y. 155; *Everett* v. *Saltus,* 15 Wend. 474; *Ballard* v. *Burgett,* 40 N. Y. 314; *Maynard* v. *Anderson,* 54 N. Y. 641.) The latter rule is, however, subject to this manifestly just limitation, that, if one who has claimed as owner is afterward proved to have but a lien, he shall not thereafter be deprived absolutely of his lien, if his claim was honestly though mistakenly entertained and pressed; but, before he can be allowed his lien, he must abandon the false claim of ownership. (*Hudson* v. *Swan,* 83 N. Y. 552.)

The cases in which this question has arisen are usually those in which the defendant to the action has repudiated his lien, but the principle is no different when it is the plaintiff who maintains the untenable position. (*Hudson* v. *Swan, supra.*)

We are, however, here concerned more particularly with the rights of one who, in the belief that he was purchasing an absolute title, has bought property from a pledgee under circumstances which, as found by the jury, did not vest that title in him. Does the purchaser under such circumstances obtain no property or interest in the goods, or does he at least succeed by purchase to the interest of the pledgee?

In the case of a mere lienholder, in the case of bailees generally, and even of factors, it is the rule as has been said, that a wrongful conversion forfeits the lien. But in the case of a pledgee the rule is otherwise. The reason for the distinction seems to be based upon two considerations: 1. That the pledgee has a special property in the chattels, which the other class does not possess;

2. That a contract of pledge carries with it the implication that the security may be sold to discharge the obligation, while in the case of a lien (except as aided by statute) the right of lien is not understood to carry with it any general right of sale. (Story on Bailments, secs. 311–25.)

But whatever may be the foundations for the distinction, it is now most firmly established in the law that a pledgee may sell or assign either the property or his interest in it to a *bona fide* purchaser, who will be allowed to hold the property until extinguishment of the original obligation.

Judge Story (Story on Bailments, secs. 324, 327) thus states the proposition: "If the pawnee should undertake to pledge the property (not being negotiable securities) for a debt beyond his own, or to make a transfer thereof to his own creditor, as if he were the absolute owner, it is clear that in such a case he would be guilty of a breach of trust, and his creditor would acquire no title *beyond that held by the pawnee.* The only question which under the circumstances would seem to admit of controversy is whether the creditor should be permitted to retain the pledge until the original debt was discharged, or whether the owner might recover the pledge in the same manner as if the case was a naked tort, without any qualified right in the first pawnee."

The hardship and injustice of the latter alternative have been so obvious to the courts that late decisions have removed the doubt expressed by Judge Story, until the rule may be taken as settled that the purchaser under such circumstances succeeds to the rights of the original pledgee. And there can be no reason seen why it should not be so. If one purchases what he believes to be the absolute title, he should not for his mistake be denied the right of taking the limited property which the seller (the pledgee) could convey. It works no hardship upon the pledgor, who, as against the substituted pledgee, has all the rights he possessed against the original.

In the leading case of *Jarvis* v. *Rogers*, 15 Mass. 389, the authorities are reviewed and the principles thus enunciated: "From these cases it appears that the pawnee may deliver the goods to a stranger without consideration, or he may sell or assign all his interest absolutely, or he may assign it conditionally by way of pawn, without in either case destroying the original lien, or giving the owner a right to reclaim them on any other or better terms than, he could have done before such delivery or assignment."

This principle has been still further extended by the supreme court of Illinois under the following facts: Plaintiff had pledged some corn as security. The pledgee made an illegal sale of it to defendant. Plaintiff sued defendant in assumpsit for money had and received, seeking to recover the value of the corn. It was held that as the original pledgee, had he been sued in assumpsit or for conversion, would have been permitted to set off the amount of his secured debt, the purchaser from the pledgee in such an action should be allowed the same right of recoupment, and should be permitted, even under an illegal sale, to hold the pledged property until satisfaction of the original secured debt. (*Belden* v. *Perkins*, 78 Ill. 449.)

The supreme court of Colorado, in a case involving rights under an illegal sale of a pledge, has said: "The sale being void upon any hypothesis, the certificate in the hands of the purchaser remained a pledge as it was before, and every right which Williams (the pledgor) had remained unaffected." (*Moffat* v. *Williams*, Colo. App. 1894; 36 Pac. Rep. 914.)

The case of *Talty* v. *Freedman's Sav. etc. Co.*, 93 U. S. 321, arose upon an unauthorized sale by the pledgee of a claim or warrant against the city of Washington to defendant. Plaintiff was the pledgor, and sued the defendant in replevin. The court decided that the defendant succeeded to the rights of the pledgee in the claim, quoting Judge Story to the effect that in case of a strict pledge if the pledgee transfers the same to his own cred-

itors the latter may hold the pledge until the debt of the original owner is discharged. In this case it is to be noticed that the pledgee made a sale not of his interest in the pledge but of the absolute property.

But after this brief consideration of a few of the cases it remains to be added that in this state the question was early considered and decided in accordance with the foregoing views in the case of *Dewey* v. *Bowman*, 8 Cal. 145, wherein it is declared that if a pledgee sells the property absolutely without demand or notice to one having full knowledge of his title, while the absolute title does not pass, still the property remains in the hands of the purchaser as a pledge, with the rights to the purchaser which were enjoyed by the original pledgee.

Williams, therefore, succeeded to Kelly's interest and to his right of possession, and the verdict and judgment are within the evidence and responsive to the pleadings. For, as has been intimated, the fact that Williams mistakenly claimed a title larger than the jury found him to own cannot defeat his action of replevin if he shows that he has even a limited interest in the property coupled with the right of possession. (*Miller* v. *Adamson*, 45 Minn. 99.) And these propositions at least he established to the satisfaction of the jury.

The objection that the complaint does not state facts sufficient to constitute a cause of action is not well taken. Plaintiff alleged that " on and after the seventeenth day of November, 1892, he was the owner and in possession of the property." It is contended that the pleading contains the same defect which vitiated the complaints in the cases of *Afflerbach* v. *McGovern*, 79 Cal. 268, and *Fredericks* v. *Tracy*, 98 Cal. 658. But in both of these cases the radical error was in pleading ownership upon a day certain and upon no other day, and there was no implication which could be construed as a pleading of continued ownership or right of action at the time of the commencement of the suit. Here, however, the averment is of ownership and possession on *and after* the

date.    It was insufficient against a special demurrer, doubtless, but defendant did not demur at all.    He answered over.    It was not obnoxious to a general demurrer, for, however imperfectly pleaded, there is still by fair intendment to be gathered from the complaint that he claimed ownership and right of possession at the time of the commencement of his action.    (*Amestoy* v. *Electric etc. Co.*, 95 Cal. 311; *Alexander* v. *McDow*, 108 Cal. 25.)

The evidence does not show a tender to Williams.

The judgment and order appealed from are affirmed.

Rehearing denied.