[S. F. No. 926.  Department One.—April 14, 1899.]

## NATHANIEL J. BRITTAN, Appellant, v. OAKLAND BANK OF SAVINGS, Respondent.

PLEDGE OF BANK STOCK—SPECIAL PROPERTY OF PLEDGEE—INVALID SALE— TRANSFER OF PLEDGE.—A pledgee of a certificate of bank stock indorsed in blank by the former owner has a special property in it, and not a mere lien thereupon, and does not lose all rights and interest in the stock by an invalid private sale thereof, without complying with the requirements of the code, but in such case the purchaser becomes a transferee of the pledge, and is entitled to hold the stock as a pledge, with the rights enjoyed by the original pledgee, until the extinguishment of the original obligation.

ID.—PLEDGE OF INDORSED CERTIFICATE BY AGENT—RIGHTS OF PLEDGEE AND OWNER.—An owner of a certificate of bank stock who has indorsed the same in blank, and delivered it to his agent, thus putting it into his power to negotiate the same, cannot recover from a *bona fide* pledgee of such agent for value, though pledged for the private account of the agent, without refunding or offering to refund the amount advanced by the pledgee to the agent thereupon.

ID.—TITLE OR AUTHORITY OF AGENT NOT INVOLVED—ESTOPPEL OF OWNER. The rights of the pledgee in such case do not depend upon the actual title or authority of the agent, but are derived from the acts of the real owner, which preclude him from disputing as against the pledgee the title or power which, through negligence or mistaken confidence, he caused or allowed to appear to be vested in the pledgor.

ID.—ACTION FOR CONVERSION OF PLEDGE — EVIDENCE—ASSIGNMENT OF CLAIM AGAINST INSOLVENT PLEDGOR.—In an action by the original owner for a conversion of the pledged certificate of stock by the pledgee of his agent, by means of a sale thereof, where it appears that the proceeds of the sale were applied toward the payment of the indebtedness of the pledgor to the pledgee, an assignment by the pledgee of the claim for the residue of the indebtedness in an insolvency proceeding against the insolvent pledgor, and the subsequent assignment thereof to the plaintiff, not being relevant to the issues on which the case was tried, are not admissible in evidence.

ID.—APPLICATION TO AMEND PLEADING—DISCRETION.—The application of the plaintiff to amend the complaint, so as to allege such assignment, was in the discretion of the court, and the refusal to grant such application will not be disturbed where no abuse of discretion appears.

ID.—PLEDGE TO SAVINGS BANK BY DIRECTOR—PROHIBITION OF BORROWING —CONSTRUCTION OF CODE—RIGHTS OF BANK.—The provision of section 578 of the Civil Code, that no director of a savings bank shall borrow its funds, and that upon so doing his office shall become vacant, cannot be availed of to defeat a pledge made by such director for money borrowed from the bank, especially after the transaction is executed. The violation of the provision can only be availed of by the sovereign power. The bank may sue to recover the money loaned, and can hold the pledged stock, or its proceeds, in a suit for the recovery of the same, until the money lent on faith of the pledge is repaid.

ID.—DEMAND OF STOCK FROM PLEDGEE—CLAIM OF OWNERSHIP—CONFLICTING EVIDENCE—APPEAL.—Upon demand of the stock from the defendant by the plaintiff, while the stock was in the hands of the defendant, if the evidence is conflicting as to whether the defendant asserted unqualified ownership of the stock, and refused to deliver it up on that ground, or merely claimed the rights of a pledgee, to whom no tender or offer of payment was made, and

the jury found for the defendant, it must be assumed upon appeal that the facts are as contended by the defendant.

APPEAL from an order of the Superior Court of Alameda County denying a new trial.   John Ellsworth, Judge.

The facts are stated in the opinion of the court.

James L. Crittenden, for Appellant.

Dunne & McPike, for Respondent.

VAN DYKE, J.—The action here is conversion. The facts of the case, as admitted, not controverted, or established by a preponderance of the testimony, are as follows: In December, 1881, and prior and subsequent thereto, A. W. Bowman was the agent of the plaintiff herein to collect rents, pay taxes, and supervise his various properties.   The plaintiff was the owner of one hundred and twenty shares of stock of the Bank of California, represented by certificate No. 17, and in December, 1881, or the beginning of January, 1882, as he testifies, he assigned this certificate in blank to said Bowman for the purpose of raising some money.   Bowman was at this time, and prior thereto had been, a director in the defendant bank, and was in the habit of borrowing large sums of money from said bank on securities, generally in the shape of stocks put up by way of pledge.   In the latter part of January or the fore part of February, 1882, Bowman presented to the cashier and president of the defendant bank the certificate in question, so indorsed to him in blank by the plaintiff.   The certificate was received and placed to the account of Bowman, entitled "overdraft account," and money was thereupon or thereafter advanced and other transactions had the same as theretofore, up to the time of Bowman's failure in 1884.   On October 15, 1884, the defendant bank surrendered the certificate of stock No. 17 to the Bank of California, and had a new certificate, No. 809, issued to it in place thereof for the shares represented in the old certificate and held by it in pledge.   Neither the defendant bank nor its officers other than director Bowman had any notice or knowledge of the fact that the certificate in question was the property of the plaintiff up to the demand made by him October 17, 1884.   On October 17,

1884, the plaintiff made a demand on the defendant for the stock in question as the owner thereof, which demand was refused. October 27, 1884, the petition of certain creditors of Bowman was filed to have him adjudged an insolvent, and thereafter, in the usual course, he was so adjudged insolvent. At no time from the date of the transfer of the certificate to the bank was the account of Bowman for moneys advanced to him by the bank reduced below the amount of the securities, including the certificate in question, and his account showed that between July, 1884, and January, 1885, it was not less than forty-two thousand five hundred dollars, and, deducting the pledged stock, it was in the neighborhood of twenty-four thousand dollars. This action was brought originally November 7, 1885, by Frank Allyn, as assignee of the plaintiff, against the present defendant, the Bank of California, said Bowman and other parties. The complaint was amended several times, and finally on the third amended complaint and the answer thereto the action was tried. Before the third amended complaint was filed Bowman died, and Allyn, the former plaintiff, reassigned to the present plaintiff, who was substituted in his place, and all the other defendants, excepting the respondent here, were omitted from the complaint on which the action was tried. In April, 1895, the action was tried before a jury, and a general verdict rendered in favor of the defendant. An appeal was had to this court from the judgment, upon the judgment-roll (*Brittan v. Oakland Bank*, 112 Cal. 1), and the judgment affirmed. This appeal is taken from the order denying plaintiff's motion for a new trial.

Between the time of the demand made by the plaintiff on the defendant bank for the stock in question and the bringing of the action, to wit, in August, 1885, the defendant bank sold the stock at private sale, without notice, for the sum of eighteen thousand nine hundred and forty-one dollars, which, with interest, deducted from the amount then due the bank from Bowman, left a balance of twenty-four thousand dollars. In May, 1887, defendant bank assigned its claim against the Bowman estate in the insolvency proceedings to W. H. Chickering for four thousand six hundred and sixteen dollars and seventy-three cents, and at about the same date Chickering assigned the same to the plaintiff Brittan.

1. One of the contentions of the appellant is, that the defendant bank, having sold the stock at private sale, without complying with the requirements of the code, thereby lost its lien and all interest in said stock. But the case here is not that of a mere lienholder or bailee, but, is a case of pledge. The stock, as already shown, was indorsed in blank by the plaintiff to Bowman. Plaintiff dealt with Bowman and not with the defendant bank. The account as furnished by Bowman to the plaintiff of his transactions as his agent, as given in evidence, shows this. A further fact going to show that the plaintiff dealt entirely with Bowman, and not with the bank, is that plaintiff filed his claim against Bowman on the balance of his account, in the insolvency proceedings against Bowman, including this same stock as certificate No. 17, and drew from the insolvency court, through the assignee in insolvency, a dividend or payment on said claim. There was also in evidence an affidavit by the plaintiff for the arrest of Bowman at the time of his failure, for the crime of embezzling the stock in question. In that affidavit he said that Bowman "then and there was the agent of deponent, and by virtue of his employment as such there came into the care and custody of him, the said A. W. Bowman, one hundred and twenty shares of the capital stock of the Bank of California . . . . which said certificate of stock was indorsed in blank by deponent, and was then and there of the value of one hundred and sixty-five dollars per share, in all of the value of nineteen thousand eight hundred dollars, all in lawful money of the United States, and the said A. W. Bowman, while then and there having as aforesaid the control and care of said shares of stock and the aforesaid certificate, did then and there fraudulently appropriate the same to his own use." This verified complaint or affidavit was filed on the eighteenth day of October, 1884, being the next day after plaintiff's demand on the defendant bank, and on the twentieth day of the same month, two days thereafter, he brought an action against the present defendant, Bowman, and the Bank of California, for an injunction, in which it is also alleged that for a long time prior to the fifteenth day of October the defendant Bowman was the agent of the plaintiff in and about the care and management of the plaintiff's business, and as such agent

had the care and custody of the said stock, which was indorsed to him in blank, giving the value thereof, the same as in the preceding affidavit.

This court, in *Williams v. Ashe*, 111 Cal. 180, distinguishes between a mere lienholder and a pledgee. In that case Ashe turned over certain horses to one Kelly in pledge as security for a sum of over four thousand dollars, and, after holding them some time and becoming dissatisfied with the first arrangement, Kelly claimed them as owner, and as such sold and delivered them to the plaintiff Williams. Williams supposed he was buying the horses absolutely, and both he and Kelly testified that the sale was intended as an absolute sale. Nevertheless, it was found that the transaction between Ashe and Kelly was that of a pledgor and pledgee. Ashe having got possession of the horses, Williams brought an action to recover them. The jury in the case returned a verdict for the plaintiff, Williams, for the return of the property, and found the value of his interest in said property to be the sum of four thousand nine hundred and nine dollars and seventy-four cents. The judgment following this verdict was for the return of the horses to plaintiff, and decreeing a lien upon them for the sum named. Defendant Ashe appealed from the judgment. In the opinion of this court it is said: "Williams, it is to be remembered, is suing primarily for the recovery of the possession of the horses, and is basing his claim upon an absolute purchase of them from Kelly. Kelly insists that he was the owner and sold the horses (and not any pledgee's interest in them) to Williams; that Ashe's debt to him had been completely extinguished, and that the relation of creditor and debtor did not exist between them at the time he made the sale. Ashe, upon the other hand, has the horses in possession, and asserts that Kelly was but a pledgee; and having sold contrary to his rights as pledgee, having repudiated the pledge and asserted ownership, in short, having made a wrongful conversion of the property, the lien is extinguished and he is entitled to retain possession against both of them. So far as concerns the rights of one who has a mere lien, as distinguished from one who claims as pledgee, the question has been answered repeatedly. It is the general rule that a lienholder who refuses upon proper demand to deliver the

property without setting up his lien thereon, or who bases his refusal upon a claim other than that of lien, waives his right to claim a lien after action commenced. It is so held in this state by the cases of *Lehmann v. Schmidt,* 87 Cal. 15, and *Sutton v. Stephan,* 101 Cal. 545, and from the number and uniformity of the authorities examined it may with safety be said that this rule is universal. Section 2910 of the Civil Code enunciates the same principle.

"It is also the rule that if one having but a lien is sued in replevin, and answers claiming absolute ownership, he will not be permitted upon the trial to assert any right as lienor. His lien is absolutely lost. [Citing a number of cases from other states.] . . . . The latter rule is, however, subject to this manifestly just limitation that if one who has claimed as owner is afterward proved to have but a lien, he shall not thereafter be deprived absolutely of his lien if his claim was honestly, though mistakenly, entertained and pressed; but before he can be allowed his lien he must abandon the false claim of ownership." Again: "But in the case of a pledgee the rule is otherwise. The reason for the distinction seems to be based upon two considerations: 1. That the pledgee has a special property in the chattels which the other class does not possess; 2. That a contract of pledge carries with it the implication that the security may be sold to discharge the obligation, while in case of a lien (except as aided by statute) the right of lien is not understood to carry with it any general right of sale. (Story on Bailments, secs. 311-25.) But whatever may be the foundations for the distinction, it is now most firmly established in the law that a pledgee may sell or assign either the property or his interest in it to a *bona fide* purchaser who will be allowed to hold the property until the extinguishment of the original obligation."

The sale in this case, not being in accordance with law, simply passed to the purchaser the rights held by the defendant bank, and if suit had been brought against such purchaser by the plaintiff, he would have been required to pay or tender only the same sum that he is required to pay or tender as against the defendant bank, the pledgee. This court, in the case of *Williams v. Ashe, supra,* says: "But after this brief consideration of a few of the cases it remains to be added that in this state

the question was early considered and decided in accordance with the foregoing views. In the case of *Dewey v. Bowman*, 8 Cal. 145, wherein it is declared that if a pledgee sells the property absolutely without demand or notice to one having full knowledge of his title, while the absolute title does not pass, still the property remains in the hands of the purchaser as a pledge, with the rights to the purchaser which were enjoyed by the original pledgee." (See, also, *Belden v. Perkins*, 78 Ill. 449; *Talty v. Freedman's Sav. etc. Co.*, 93 U. S. 321.) The plaintiff having transferred or indorsed the stock in blank and delivered the same to his agent, with power to negotiate or pledge the same, cannot recover from a pledgee of such agent who took it in good faith and for value, without refunding or offering to refund the amount advanced by the second party to whom it was so pledged. In *McNeil v. Tenth Nat. Bank*, 46 N. Y. 325, 7 Am. Rep. 341, it was held that an innocent subpledgee was entitled, as against the original pledgor, to hold the stock for the full amount advanced by the subpledgee. The opinion proceeds: "Where the true owner holds out another, or allows him to appear, as the owner of or as having full power of disposition over the property, and innocent third parties are thus led into dealing with such apparent owner, they will be protected. Their rights in such cases do not depend upon the actual title or authority of the parties with whom they deal directly, but are derived from the acts of the real owner, which preclude him from disputing as against them the existence of the title or power which, through negligence or mistaken confidence, he caused or allowed to appear to be vested in the party making the conveyance." Again: "The common practice of passing the title to stock by delivery of the certificate with blank assignment and power has been repeatedly shown and sanctioned in cases which have come before our courts. . . . . A blank transfer on the back of the certificate to which the holder has affixed his name is a good assignment, and a party to whom it is delivered is authorized to fill it up by writing a transfer and power of attorney over the signature." (Civ. Code, sec. 2991.)

2. Another contention on the part of the appellant is that the court below erred in excluding the defendant's assignment

to Chickering and Chickering's assignment to plaintiff of the claims of the defendant against Bowman and his insolvent estate. The basis of this contention, as appears in the briefs and by the oral argument of the appellant's counsel, is that by this sale the bank had no further claim against Bowman against which to offset or recoup the stock or the proceeds thereof.

As appears from the foregoing statement of facts, the original certificate of stock was surrendered to the Bank of California, and a new certificate issued to the defendant. This was held by the defendant in lieu of the former as a pledge to secure its account for money loaned Bowman; and this account was much greater than the value of the stock at the time of plaintiff's demand, October 17, 1884. When the plaintiff demanded the stock he made no offer to pay the indebtedness of Bowman for which it was held in pledge, or any part of it; and, the demand being refused, the defendant held the new certificate as such pledgee up to the sale of the stock in August, 1885. After the sale, as already stated, the proceeds thereof were applied on the Bowman indebtedness, leaving still a large balance of indebtedness from Bowman to the bank. The claim filed by the bank in the insolvency proceeding was long after this sale, and was for the balance only of the overdraft account or indebtedness of Bowman to the bank after deducting the proceeds of such sale. The amount received on the Chickering assignment was four thousand six hundred and sixteen dollars and seventy-three cents, as already stated.

Appellant, however, claims that the defendant could not apply the proceeds of the stock sold in August, 1885, to the overdraft account of Bowman, but was obliged to keep such proceeds in lieu of the stock, subject to the demand of the plaintiff. But the defendant did apply such proceeds to the Bowman account, and this action is brought for the conversion of said stock by reason of such sale, and the application of the proceeds by the defendant as aforesaid. Besides, the matter offered in evidence was not relevant to the issues presented by the last amended complaint and the answer thereto, on which the action was tried. It appears, however, that during the trial the plaintiff asked leave of the court to add a paragraph to his last amended complaint, pleading the matter of the assignment by

the defendant of its claim in the insolvency proceeding of Bowman, but the court refused to grant such leave, and the appellant assigns this as one of the errors. The matter of granting or refusing leave to amend is very largely in the discretion of the trial court, and we cannot say that in this instance, taking into considération the time when the application was made, there was any abuse of discretion to refuse the application.

3. At the time of the transaction between Bowman and the bank, as already stated, he was a director in the bank. The Civil Code, section 578, declares that no director or officer of any savings and loan corporation must, directly or indirectly, for himself or as the partner or agent of others, borrow any of the deposits or other funds of such corporation, and declares that the office of any director or officer who acts in contravention of this provision shall immediately thereupon become vacant. This, however, is of no advantage to the appellant, as the violation of the provision in question could only be availed of at the instance of the state or sovereign power. (*Jones v. Guaranty etc. Co.*, 101 U. S. 628; *National Bank v. Matthews*, 98 U. S. 621.) Besides, the transaction was executed. In *Savings Bank v. Burns*, 104 Cal. 473, the court in answering a similar contention that the transaction was void as being in contravention of the provision of the code, says: "We do not think this contention can be sustained. The obvious purpose of the section of the code invoked and relied upon was to protect savings banks and their depositors. To hold, therefore, that if the deposits or funds of such a bank should be borrowed by any of its officers, directly or indirectly, no action could be maintained by the bank to recover the money, would often work out great injustice and wrong." The bank, therefore, could have sued Bowman to recover back the money loaned, and it can hold the pledged stock or its proceeds in a suit for the recovery of the same until such money lent on the faith of such pledge is repaid.

4. Appellant contends that the evidence is insufficient to support the verdict, in that the evidence, as claimed, shows that when the plaintiff demanded the stock, defendant asserted the unqualified ownership thereof, and refused to deliver it on that ground. This is contested by defendant, and there is a sub-

stantial conflict in the evidence in reference to this, and the jury found by its verdict for the defendant. In such case it must be assumed by this court that the facts are in accordance with the defendant's contention on this point.

5. Appellant challenges the correctness of some of the instructions given at the request of the defendant, and of the refusal to give other instructions offered by the plaintiff, and also some of the court's charges to the jury. But, taking the instructions and charges altogether, they presented the case fairly to the jury.

It will not be necessary to notice in detail the other points presented on behalf of the appellant. It is sufficient to say that we see no errors in any of them prejudicial to the appellant or which would justify a reversal.

The order denying a new trial is affirmed.

Harrison, J., and Henshaw, J., concurred.