## JAMES C. HUNSAKER *v.* JOSIAH STURGIS.

INCOME RECEIVED BY PLEDGEE FROM PROPERTY PLEDGED.—Where the relation of
pledgor and pledgee exists, if the debt is paid, it is the duty of the pledgee to
account for and pay over all the income, profits, and advantages derived from the
bailment.

FRAUD BY AGENT OF VENDOR BECOMING AGENT OF PURCHASER.—If the pledgor
makes the pledgee his agent to sell the property pledged, and the pledgee then
becomes the agent of the purchaser, he commits a fraud on the pledgor, and is
bound to pay him all that he received from the purchaser for acting on his behalf.

BREACH OF CONFIDENCE BY UNPAID AGENT.—Where a person voluntarily becomes
an unpaid agent of another to negotiate a sale of stock of a corporation, and then
receives a certain sum from a purchaser as a reward for acting in his behalf, and
procuring a sale for less than the purchaser was willing to pay, the agent becomes
liable to the owner for the loss he sustained by this breach of confidence.

BREACH OF CONFIDENCE.—Where one reposes special confidence in another in
negotiating a sale of property, and the other seeks this confidence, and then
betrays it to the damage of the one by whom he was trusted, he becomes liable
for the loss sustained thereby.

APPEAL from the District Court, Fourth Judicial District,
City and County of San Francisco.

Plaintiff recovered judgment for the sum of two thousand
two hundred and fifty dollars, and defendant appealed.

The other facts are stated in the opinion of the Court.

*Clarke & Carpentier*, for Appellant.

To constitute an agent for any purpose, he must be clothed
with authority by the employer to do something, the perform-
ance of which, or damages for non-performance, might be
enforced by the other principal.

In the case made by the testimony it is not pretended that the defendant was authorized to do any act, or make an engagement, in the name or behalf of the plaintiff or his assignors, nor that the defendant " assumed to do the business and render an account of it." (Paley's Agency, 1.) Authority, consideration, and reciprocity of agreement, were wanting.

*Sloan & Provines*, for Respondent.

" Wherever confidence has been reposed, justice forbids that it should be abused; and the rule applies as strongly to those who have gratuitously or officiously undertaken the management of another's property as to those who are retained or appointed for that purpose and paid for it. (*Rankin* v. *Porter*, 7 Watt, 390.)

" The confidence induced by undertaking any service for another is a sufficient legal consideration to create a duty in the performance." (1 Smith's Lead. Cases, marg. p. 96, top p. 254.) And this, even though the undertaking be gratuitous, (*Wilkinson* v. *Coverdale*, 1 Esp. R. 74,) if the agent or bailee be guilty of gross negligence or fraud. (*Doorman* v. *Jenkins*, 2 Ad. & Ell. 256.)

" The principle is, that where a party affirms either that which he knows to be false or does not know to be true, to another's loss and his own gain, he is responsible in damages for the injury occasioned by such falsehood." (*Lobdell* v. *Baker*, 1 Met. 201.)

By the Court, SHAFTER, J.

Hunsaker, Tyler, Wittenmyer and the defendant, all residents of the Town of Martinez, were stockholders in the " Black Diamond Coal Mining Company," the first three owning one sixteenth each of the capital stock, and Sturgis holding a still larger interest. The stock belonging to Hunsaker was held by Sturgis in pledge to secure a debt of two thousand five hundred dollars which Hunsaker was owing him. The evidence tended to prove that the plaintiff, in April, 1863, sold

his stock to Marziou & Co., of San Francisco, for the sum of four thousand five hundred dollars, and Tyler and Wittenmyer soon after sold out in like manner to the same parties for the same money. The evidence further tended to prove that the plaintiff, some months before his sale to Marziou & Co., authorized the defendant to sell his, the plaintiff's, stock "for the most he could get," and that the defendant under professions of friendship for the plaintiff, undertook to aid him in finding a purchaser and without pay for his services. That he also volunteered to aid Tyler and Wittenmyer in selling their stock, at the best price, to Marziou & Co.; and undertook and was instructed by them to find out and report what was the best that could be done with that firm. That Sturgis on applying to Marziou & Co., was informed that they considered a sixteenth part of the stock cheap at six thousand dollars, and that they were ready to take the three sixteenths in question at that rate. The evidence further tended to prove that Sturgis thereupon informed Marziou & Co. of the confidential relations in which he stood to the owners of the stock, and that he told them further, or gave them to understand, that through him and "by reason of his situation with respect to those parties," their interests could be bought at less than the sum which the firm was ready and willing to pay, and that it was thereupon arranged between Sturgis and Marziou & Co. that he (Sturgis) should be and become the secret agent of the company for the purpose of buying the three sixteenths at the lowest possible figure, and if a sale of the stock to Marziou & Co. should be effected through the defendant's procurement, at less than six thousand dollars per sixteenth, that the said purchasers would pay to defendant for his services one half the difference between six thousand dollars and the sum at which the purchase should be made. The evidence further tended to prove that the defendant in pursuance of this arrangement, represented to the owners of the stock that he had seen Marziou & Co., and that they would give four thousand five hundred dollars for each of their sixteenths and no more; and advised them to call upon Marziou & Co. in person. The parties afterward acted on this advice,

but the evidence tended to prove that the defendant, in the interval, advised Marziou & Co. that he had told the plaintiff Tyler and Wittenmyer that they, Marziou & Co., would pay no more than four thousand five hundred dollars per sixteenth; and that when called upon by the owners of the stock, they refused in pursuance of the previous collusion, to buy at a higher rate. Thereupon the owners assented to the offer of four thousand five hundred dollars made through Sturgis, and Marziou & Co., and paid the defendant two thousand two hundred and fifty dollars as agreed, it being one half of three times the difference between four thousand five hundred dollars and six thousand dollars. Subsequently Tyler and Wittenmyer assigned to the plaintiff, and this action is brought to recover the two thousand two hundred and fifty dollars named.

*Pledgor and pledgee, and agent and principal.*

First—The relation of pledgor and pledgee existed between the plaintiff and defendant in so far as the plaintiff's stock was concerned; and the debt having been paid, it became the duty of the defendant to account for all the income, profits and advantages derived by him from the bailment. The defendant could make no gains to himself, directly or indirectly, in dealing with the stock. It was a fraud on his part to become the agent of Marziou & Co. to buy that which he himself held in trust for another; and he is bound to pay over all that he received from them, no matter how he, or he and they, may have first divided, and then named the different parts of the sum. But aside from the pledge, the evidence tended to prove that the defendant became the agent, not only of the plaintiff, but of Tyler and Wittenmyer also, to find out and report the highest price for which the stock could be sold, and particularly to ascertain and report the best price which Marziou & Co. would pay. The defendant not only accepted but solicited this trust. It is a matter of no moment, so far as defendant's obligations are concerned, that his services were to be without pay. There are unpaid as well as paid agents—a distinction

19

taken as early at least as *Coggs* v. *Barnard*, Lord Raymond, 900, and recognized ever since. The defendant was not legally bound to make inquiry after purchasers, for his undertaking so to do was without consideration; and having found out what Marziou & Co. would pay, he might have safely omitted to report the result for the same reason. But when he undertook to report he was bound to tell the truth.

### Duty of agent towards principal.

But should it be admitted that the dofendant was not an agent *eo nomine* of the several owners of the stock, and that he did not stand in any trust known by a technical name; it in our judgment would on the facts of the case make no difference. It is enough that there was a special confidence reposed in the defendant; that he sought it and then knowingly betrayed it to the damage of those by whom he was trusted, and for a mercenary purpose. This is even more than enough to hold the defendant; for in the leading case of *Pasley* v. *Freeman*, 3 T. R. 51, there was not only no privity of contract between the parties to the action, but there was no collusion between the defendant and Falch whose claims to credit the' defendant knowingly misrepresented. Nor did it appear that Freeman made his false recommendations with a view to a money or any other profit. The case was decided on the broad principle that a false affirmation made by one man to another with intent to defraud him, and whereby he is damaged, is an actionable injury; no matter whether the party practicing the deceit is benefited by it or not or colludes with the person who is. The authority of that case has never been shaken, and the principle upon which it proceeds has received the widest judicial recognition. (2 Smith's, L. C. 146.)' Legal obligations and moral obligations are not always the same, but wherein they are found to coincide the advantage must be regarded as too valuable to be surrendered.

We might proceed to modify the judgment, but inasmuch as the defect in the plaintiff's proof may be supplied, we

consider that the ends of justice would be best subserved by granting a new trial.

Judgment reversed and new trial ordered.

NOTE.—The judgment was reversed because the assignments from Tyler and Wittenmyer to plaintiff had been admitted in evidence without being stamped. Subsequently a rehearing was granted in the Supreme Court on the ground of the decision on that question. Pending the rehearing and before re-argument, the case was settled. That portion of the opinion relating to the stamps is not published.

REPORTER.