[S. F. No. 2157.    Department Two.—September 22, 1902.]

A. O. COLTON, Assignee, etc., Appellant, v. OAKLAND BANK OF SAVINGS et al., Respondents.

PLEDGE—CONVERSION—PASSAGE OF TITLE TO ASSIGNEE OF INSOLVENT PLEDGEE—ACTION BY ASSIGNEE—RIGHTS OF PLEDGOR NOT INVOLVED.—A pledgor of bank stock, by presenting his claim against the assignee of the insolvent pledgee thereof, who had converted the pledge by assignment of the stock as security for his own indebtedness to a bank, and by receiving dividends thereon from such assignee, passed title to the assignee; and the claims of the pledgor are not involved in an action by such assignee against the bank for conversion of the stock by sale thereof without notice.

ID.—ASSIGNEE NOT DAMAGED—VALUE OF STOCK CREDITED UPON OVERDRAFT BY INSOLVENT.—Though the assignee of the insolvent may be entitled to recover any damages which may exist by reason of the sale of the stock by the bank without notice, yet when it appears that the full value of the stock was applied as a credit upon the overdraft account of the insolvent debtor, who had pledged the stock to secure such overdraft, leaving an unpaid balance of indebtedness, there are no damages to be recovered by the assignee.

ID.—LAPSE OF TIME—SALE AND CREDIT NOT OBJECTED TO—ASSIGNMENT BY BANK.—After a lapse of eighteen months after the sale of the stock and the credit made upon the overdraft, without any objection interposed by the debtor or by his subsequent assignee in insolvency, a general assignment, made by the bank to an attorney, of all claims, demands, and rights of action, could only be construed as including the unpaid overdraft account, and not as including the amount of credit made thereupon, upon the theory that the sale and credit were absolutely void.

ID.—TENDER—UNDUE OFFER—REJECTION—OBJECTION NOT WAIVED.—A tender by the assignee in insolvency of ten dollars in satisfaction of any indebtedness of the insolvent debtor to the bank, accompanied by a demand of the pledged stock, which was rejected by the bank, was not a due offer of payment to extinguish an indebtedness of nearly twenty thousand dollars; and objection to such undue offer cannot be deemed waived because of failure to object specifically to the mode of the rejected tender.

APPEAL from a judgment of the Superior Court of Alameda County and from an order denying a new trial. F. B. Ogden, Judge.

The facts are stated in the opinion of the court.

James L. Crittenden, for Appellant.

Henry C. McPike, and Dunne & McPike, for Respondents.

BEATTY, C. J.—This is an action by the assignee of A. W. Bowman, an insolvent debtor, to recover $20,000, the alleged value of one hundred and twenty shares of the capital stock of The Bank of California. The nature of the controversy will be sufficiently disclosed by a brief statement of some of the leading facts:—

On the 15th of November, 1881, N. J. Brittan was the owner of the stock in question, which stood in his name on the books of the corporation, and was evidenced by certificate No. 17. On that day he indorsed the certificate in blank and delivered it to Bowman as a pledge to secure advances which Bowman at the same time agreed to make to the extent of $15,000. On the 1st of December, 1881, Bowman delivered this certificate of stock to the defendant the Oakland Bank of Savings as a pledge to secure his overdraft account with that bank. Between December, 1881, and the fifteenth day of October, 1884, Bowman made certain advances to Brittan which were fully repaid prior to the last-named date, and during the same time Bowman's overdraft account with the defendant bank exceeded the value of said stock. On October 15, 1884, the defendant bank surrendered said certificate of stock No. 17 to The Bank of California and procured the issuance to itself of a new certificate for the same one hundred and twenty shares of stock. Two days later Brittan notified the Oakland bank of the facts above stated, regarding his ownership of the stock, of its pledge to Bowman, and of the full payment of the advances secured by the pledge. The Oakland bank, however, refused his demand for a return of the stock, upon the ground that they had taken it in good faith from the apparent owner and held it as a pledge to secure a debt exceeding its value. Shortly afterwards, on the petition of his creditors, Bowman was adjudged an insolvent, and upon the appointment of his assignee the claim of Brittan for the value of said one hundred and twenty shares of stock was presented as a demand against the insolvent estate. As such it was duly allowed for the full sum of $20,000, and subsequently the same dividends were paid thereon as upon the claims of other creditors. On or about the 25th of August, 1885, and after Bowman's assignment in insolvency, the Oakland bank, without any order of court, and without demand

or notice, sold at auction said one hundred and twenty shares of stock for $18,941—their full value—and credited that amount to Bowman's overdraft account, leaving a balance of more than two thousand dollars unpaid.

In May, 1887, the Oakland bank assigned to Chickering all its then existing demands and claims against Bowman and his estate, and in July, 1888, Bowman's assignee in insolvency, predecessor of the plaintiff herein, made a tender to the defendant bank of the sum of ten dollars, in payment of any balance then due from Bowman, and demanded a return of said one hundred and twenty shares of pledged stock. This tender was declined and the demand refused, and thereupon this action was commenced on August 16, 1888.

The cause was tried by the court, judgment given for the defendant, and a motion for new trial overruled. From the judgment and order the plaintiff appeals.

In order to a proper consideration of the real merits of the case, it will be convenient in the first place to dispose of some irrelevant matters that have been brought into it. Besides the facts above stated, the complaint contains a number of allegations to the effect that the defendant bank was not acting in good faith when it took the stock as a pledge to secure Bowman's debt—the substance of the charge being that it had notice of facts at least sufficient to put it upon inquiry, which, if made, would have disclosed the fact that the stock was the property of Brittan, and that Bowman had no right to pledge it for more than the small amount of Brittan's indebtedness to him. In support of these allegations evidence was offered at the trial, and in various ways there seems to have been an effort to re-enforce the claim of plaintiff by calling to its aid the supposed claims of Brittan against the bank arising out of its transactions with Bowman in relation to this stock.

It is not entirely clear from the argument of counsel for appellant to what extent he relies in support of his appeal upon this feature of the case and the rulings of the superior court relating to it; for while he concedes in two passages of his closing brief that "Brittan's rights and interests are not involved in the case," he yet in other parts of his argument insists upon assignments of error which upon this concession appear to be wholly unsupported. In view of this uncertainty as to appellant's position, we deem it proper to say that in our

opinion the rights of Brittan against the bank, whatever they may have been, have no place in this controversy. The plaintiff is not Brittan's assignee, and his only claim of title to the stock is wholly dependent on the assumption that Bowman converted it by pledging Brittan's title to the bank. Upon this ground alone could Brittan claim the value of the stock from Bowman's assignee, and the allowance of that claim and payment of dividends to Brittan estop him to deny that his title passed by the conversion. Any claim that Brittan's title was not effectively pledged by Bowman to the bank is therefore entirely inconsistent with the only possible right of this plaintiff to recover in the present action. The right of Bowman's assignee to recover the value of the stock is precisely the same right that Bowman himself would have had if, after pledging the stock to secure his own indebtedness, he had, on Brittan's demand, paid him its full value, and Brittan's rights are the same as they would have been after demanding and accepting such value.

When personal property has been converted, the owner by accepting its value, on suing and recovering its value from the trespasser, passes the title to him, and so in this case the same act that invested plaintiff with the only title he has put an end to any claim of title in Brittan. The supposed right of Brittan as against the Oakland bank being thus eliminated from the case, we have only to consider the rights of Bowman's assignee arising out of a valid pledge by Bowman to the bank of the whole property in the stock; and those rights cannot possibly be greater than Bowman's own rights would have been if the stock which he pledged had been rightfully as well as apparently his own property, and he were suing in his own name for its value.

We assume that the bank was guilty of a conversion of the stock by selling its pledge without notice, and that plaintiff is entitled to recover for the benefit of Bowman's creditors whatever damages resulted from such conversion. The superior court found, and found correctly, that in fact no damages resulted from the sale. Bowman's debt to the bank on his overdraft account amounted at the date of the sale to more than $21,000. It is not claimed that the stock was ever worth more than $20,000, and the proof is, that $18,941—the price for which it was sold—was all that it was worth. This full

value of the stock was immediately credited on Bowman's
overdraft account, so that he lost nothing and the bank gained
nothing in consequence of the technical conversion upon which
this action is founded.

But the appellant contends that the conversion of the pledge
by selling without notice, followed by his tender of ten dollars
in payment of any balance remaining due from Bowman to
the bank—the amount of the tender not having been objected
to—gave him a right of action to recover the full value of the
stock, and that defendant has nothing to set off or recoup
against his demand, for two reasons: 1. Because prior to his
tender and demand for a return of the stock the bank had
parted with its entire original claim against Bowman by its
assignment to Chickering; and 2. Because, if such was not
the effect of the assignment to Chickering, still the failure of
the defendant to object to the amount of the tender of ten
dollars, followed by the deposit of that sum to its credit in
another bank, with due notice thereof, had the effect under
the provisions of our codes to extinguish the entire indebted-
ness of over $20,000.

Several of appellant's principal assignments of error
depend upon the first of these propositions, and rest upon
rulings of the superior court excluding evidence and refusing
to find specially that the whole of defendant's original claim
passed to Chickering by the assignment. We think the supe-
rior court ruled correctly respecting these matters. The date
of the assignment to Chickering was in May, 1887, and it was
in general terms an assignment of all claims, demands, and
rights of action which the bank then had against Bowman or
his assignee. The theory of the appellant is, that the sale of
Bowman's pledge being illegal for want of notice, the credit
of the proceeds upon the secured indebtedness was simply
void; that the account remained unaltered in legal effect and
the debt undiminished, as a consequence of which the entire
original claim of the bank was covered by the general terms
of the assignment. It is scarcely necessary to say that there
is nothing in the case, aside from the language of the assign-
ment, to indicate that either Chickering or the bank
understood or intended it to have any such effect. On the
contrary, the consideration paid, the condition of Bowman's
overdraft account as it then stood on the books of the bank, the

number and amount of other and independent claims against Bowman's estate in insolvency then held by the bank, and all the surrounding and attendant circumstances, as well as the practical construction placed upon the transaction by the parties to it, all support the conclusion that the bank did not intend to assign, and Chickering did not expect to get, any part of the claim of the bank on the overdraft account, except so much thereof as remained after crediting the proceeds of the pledged stock. Upon these grounds alone it should be held against this claim of a stranger that the assignment should be given the effect intended by the parties to it. But even if this claim as to the effect of the assignment was being urged by or in behalf of the assignee,—a claim that he has never made,—there would be a sufficient answer to it upon grounds technically valid. The provision of the code for notice to the pledgor before sale of a pledge is made for his benefit, and he alone has a right to complain of its omission. Where after a sale without notice he has been credited upon his indebtedness with the full value of the pledge, it may be greatly to his advantage to accept the situation, and he may ratify the sale either expressly or by implication. He is not bound to object, and until he does object the sale and credit bind his creditor. As to the latter and third parties dealing with him, there is nothing to be transferred by assignment excepting the balance remaining due after deducting the proceeds of the pledge. An assignment cannot carry a claim with which the assignor has parted by a transaction, of the benefit of which his debtor may avail himself at his option, and the effect of the assignment at the time when it is made will not be enlarged by any subsequent acts of the debtor. Here a period of more than eighteen months had elapsed after the sale of the pledge and the credit of its proceeds before the assignment to Chickering, and neither Bowman nor his assignee had made any objection. As between Chickering and the bank, therefore, there was nothing to be assigned except the balance of the overdraft account, and the other and independent claims then existing in favor of the bank. When, more than a year later,—in July, 1888, —plaintiff made his tender and demanded a return of the pledged stock, if the effect was to revive that portion of the indebtedness which had been canceled by the credit of 1885, it was revived in favor of the bank, and not in favor of Chick-

ering.   In this view of the case it is clearly distinguishable from *Ralston* v. *Bank of California,* 112 Cal. 214, where there had been no credit upon the indebtedness of the stockholder, and the whole of it had been assigned.   The New York case (*Stokes* v. *Stokes,* 148 N. Y. 718) is even less in point.

The bank then having a claim of its own amounting to $18,941, which it was entitled to have paid before surrendering its security, it is conceded that plaintiff was bound to make a proper tender of payment before he could demand a return of the pledge or sue for its conversion.   He tendered, as we have seen, the sum of ten dollars.   To the amount of this tender no objection was made, the officers of the bank simply declaring that they did not claim anything to be due from Bowman or Bowman's assignee.   The ten dollars was thereupon deposited in another bank to the credit of defendant and due notice given.   The appellant contends that by this means he not only gained a right of action for the conversion of the stock, but extinguished the whole indebtedness for which it had been pledged—that by an offer to pay ten dollars he extinguished an indebtedness of $18,941.   To sustain this contention he cites sections 1500 and 1501 of the Civil Code:—

"An obligation for the payment of money is extinguished by a due offer of payment, if the amount is immediately deposited in the name of the creditor, with some bank of deposit within this state, of good repute, and notice thereof is given to the creditor." (Sec. 1500.)

"All objections to the mode of an offer of performance, which the creditor has an opportunity to state at the time to the person making the offer, and which could be then obviated by him, are waived by the creditor, if not then stated." (Sec. 1501.)

And sections 2074 and 2076 of the Code of Civil Procedure:—

"An offer in writing to pay a particular sum of money, or to deliver a written instrument or specific personal property, is, if not accepted, equivalent to the actual production and tender of the money, instrument, or property." (Sec. 2074.)

"The person to whom a tender is made must, at the time, specify any objection he may have to the money, instrument, or property, or he must be deemed to have waived it; and if the objection be to the amount of money, the terms of the

instrument, or the amount or kind of property, he must specify the amount, terms, or kind which he requires, or be precluded from objecting afterward." (Sec. 2076.)

These provisions of the Code of Civil Procedure are mere rules of evidence affecting the question of costs and the right to bring actions in cases where a tender is necessary before commencing the action. This is very clearly shown by the two cases cited by appellant from our own reports (*Oakland Bank* v. *Applegarth,* 67 Cal. 86; *Scott* v. *Jackson,* 89 Cal. 258). The provisions of the Civil Code come nearer the case, but they do not sustain the appellant's contention. An offer of ten dollars is not a *due* offer of payment of a debt of nearly $20,000, conceding that a debt then existed, and there was no objection that could have been made to the mere *mode* of the offer. Besides, the Oakland bank is not claiming that anything is due or was due at the time of the tender. Its claim is, that the obligation had long before been extinguished by the credit given for the proceeds of the stock. It recoups the damages by crediting the proceeds of the pledge at the date of the conversion.

These views as to the main features of the case render it wholly unnecessary to consider the numerous minor assignments of error upon the rulings and findings of the court,— such rulings, for instance, as the refusal to allow proof of an assignment from Chickering to Brittan. If the assignment to Chickering was of no consequence in this case, his assignment to Brittan must be equally immaterial.

The judgment and order of the superior court are affirmed.

McFarland, J., and Temple, J., concurred.

Hearing in Bank denied.