[Civ. No. 1585.   Second Appellate District.—May 28, 1915.]

## GEORGE C. LEM, Respondent, v. PHILIP L. WILSON et al., Appellants.

ACTION FOR DAMAGES—PLEDGED STOCK—WRONGFUL SALE OF—LIABILITY FOR.—A president of a bank, who without authority from the bank, makes a sale of corporate stock pledged to the bank as security for the payment of certain promissory notes executed by the pledgor to the bank, is liable to such pledgor in damages for the difference between the value of the stock and the amount received from its sale, where he makes such sale without advertising the same, or making any demand upon the pledgor for the payment of the notes or giving him any notice of his intention to sell, in order that he might secure such stock and prevent other bidding, notwithstanding that he was authorized by a writing contemporaneous with the pledge to sell the stock and apply the proceeds to the indebtedness due to the bank.

ID.—AGENCY—GOOD FAITH—NEGLIGENCE.—The law requires perfect good faith on the part of agents, not only in form, but in substance, and they are liable to their principals for losses that the latter may sustain by reason of their negligence

APPEAL from a judgment of the Suprerior Court of Los Angeles County.   Charles Wellborn, Judge.

The facts are stated in the opinion of the court.

J. W. McKinley, Frank Karr, and A. W. Ashburn, Jr., for Appellant.

Shaw & Stewart, for Respondent.

SHAW, J.—This is an appeal by defendants from a judgment rendered in favor of plaintiff, prosecuted upon the judgment-roll accompanied by a bill of exceptions.

The action grew out of a sale made by defendant Wilson of corporate stock pledged by plaintiff to defendant Traders Bank of Los Angeles, of which Wilson was president, as security for the payment of promissory notes made by plaintiff to the bank, which notes were on March 28, 1913, due and unpaid. Pursuant to instructions of the bank to collect the notes the stock, consisting of fifteen shares of the capital stock of said bank, without any demand having ever been

made upon plaintiff for payment, was by Wilson, in the lobby of the bank, immediately upon the opening thereof at 10 o'clock A. M., March 28, 1913, and without any advertisement thereof or other notice of sale, or notice given to plaintiff of his intention to sell the same, sold to one J. M. Best, who happened at the time to be in the bank, for the sum of one hundred and ten dollars per share and the proceeds thereof paid to the bank and applied in payment of plaintiff's notes.

The only authority that Wilson had for selling the stock in the manner mentioned was a written instrument executed and delivered to him by plaintiff, at the time of depositing the collateral, as follows: "I hereby authorize Philip L. Wilson or assigns to sell and in my name indorse and transfer my stock in the Traders Bank of Los Angeles, and to apply the proceeds of the same to the payment of indebtedness, present or future, to said bank. (Signed) Geo. C. Lem." Plaintiff's cause of action is based upon the alleged fact that the stock at the time was reasonably worth two hundred dollars per share and that the act of Wilson in making the sale, without notice thereof or notice to plaintiff, at an early hour, in the bank, instead of at the stock exchange, which was the usual place for making such sales, was as to him wrongful and negligent to his damage in the sum of ninety dollars per share. The court sustained plaintiff's contention, except that it found the value of the stock to be one hundred and seventy-five dollars per share, and gave judgment accordingly.

While the bank might itself have sold the stock in accordance with the provisions of law authorizing the pledgee to sell pledged property, it also had the legal right to demand a sale of the pledged property by Wilson, whose relation to the parties, since he was acting for both, was in the nature of a trustee. The bank as pledgee did not sell the stock, and neither the evidence nor findings made by the court disclose any illegal or wrongful act on the part of the bank; hence the judgment rendered against the bank is unwarranted and must therefore be reversed.

Wilson was authorized to sell the stock and did, as found by the court, sell it to J. M. Best; hence it cannot be claimed there was any conversion thereof by him. Nevertheless, in acting as agent, even though the service was gratuitous, he would be liable to his principal for damages resulting from

27 Cal. App.—33

any gross neglect of duty which he owed to his superior. "An agent to buy or sell property for his principal will be liable for losses which the latter may sustain by reason of his negligence." (31 Cyc., p. 1460.) Says Mr. Mechem in his work on Agency, section 1323: "It is of course the duty of the agent charged with the sale of goods or other property to exercise reasonable care, skill and diligence in the performance of his undertaking." In *Tate* v. *Marco,* 27 S. C. 493, [4 S. E. 71], it is said "the law requires perfect good faith on the part of agents, not only in form, but in substance." (See, also *Hunsaker,* v. *Sturgis,* 29 Cal. 142; *Sturges* v. *Keith,* 57 Ill. 451, [11 Am. Rep. 28]; *Herrick* v. *Hodges,* 13 Cal. 434, and *Samonset* v. *Mesnager,* 108 Cal 354, [41 Pac. 337], to the effect that agents and trustees must act in good faith with ordinary diligence and sound discretion.)

We are not called upon to consider other alleged errors than those specified in the bill of exceptions, and the only ones so specified are the insufficiency of the evidence to support certain findings made by the court to the effect that on March 28, 1913, the shares of stock so sold by defendant Wilson could have been sold at and upon the Los Angeles Stock Exchange for the price of one hundred and seventy-five dollars per share; that said sale so made by him was made willfully, negligently and fraudulently in violation of plaintiff's rights; that Wilson failed and refused to make any public offering of said shares of stock in such manner as to bring said shares to the attention of possible customers other than said J. M. Best, which neglect and refusal on the part of Wilson were due to the fact that he desired to sell said stock to some person who would act with him in maintaining control of the bank, and hence failed to give publicity to the sale by advertisement or otherwise, or sell the same on the Los Angeles Stock Exchange, for the reason that he feared some person adverse to him would become purchaser thereof. It appears without contradiction that on March 27th, the day before the sale, the cashier of the bank had two or three talks with plaintiff in an effort to induce him to sell the stock, one of which conversations was in the evening of the 27th, wherein he asked plaintiff if he had disposed of the stock, and receiving a negative answer, replied: "Don't dispose of it until you see me." And upon plaintiff making inquiry

as to a demand for the stock, the cashier again said: "You won't dispose of it until you see me, will you?" to which plaintiff replied: "No, I will see you in the morning." There is also evidence to the effect that a contest was pending for control of the bank between defendant Wilson, its president, and another party, and that sales of stock were made on the stock exchange on March 28, 1913, at upwards of one hundred and seventy-five dollars per share; that defendant Wilson bought stock himself on said day at one hundred and fifty-five dollars per share; that Best made the purchase of the stock at the request of Wilson who testified that he loaned him the money with which to make the purchase. Further testifying, he says: "I didn't charge him interest on the loan. This was my own personal money and when I make a personal loan, I very rarely charge any of my friends interest." ("For when," said Antonio, "did friendship take a breed of barren metal of his friend.") "I did not take any note. I took the stock off his hands. That was perhaps a month later." From this and other evidence the tendency of which was to establish such fact, it conclusively appears that Wilson, as found by the court, was desirous of obtaining control of this stock, and using the power of attorney so given him by plaintiff he, for that purpose, without notifying plaintiff—who it appears would have paid his note promptly—or advertising the sale, sold it in the bank lobby at 10 o'clock A. M. for one hundred and ten dollars per share; that his purpose in so doing was to prevent others then interested in acquiring the same from purchasing it; that although no demand was made upon plaintiff for the payment of his note, he did, a few minutes after the sale had been made and without having knowledge that the stock had been sold, appear at the bank and, ascertaining the amount due, presented a check in payment of the same, which the bank refused and for the first time informed him of the sale; that had notice of the sale been given and the pledged property sold at the Los Angeles Stock Exchange it would have brought one hundred and seventy-five dollars per share. Under these circumstances, to hold that plaintiff cannot recover damages sustained by reason of the acts of his agent would be to countenance the grossest fraud. (*Foote* **v.** *Utah Savings Bank,* 17 Utah, 283, [54 Pac. 104].)

Counsel for appellant devotes much of his argument to a contention that by virtue of a collateral agreement authorizing the sale in the manner in which this stock was sold of certain other stock deposited as additional security for the payment of the notes (and which, notwithstanding the proceeds of the stock sold by Wilson were inadequate to pay the notes, the bank did not sell), likewise authorized the sale of the stock in question. Suffice it to say that that agreement made no reference to the stock which Wilson sold, and which, aside from general authority under the law to sell pledged property, he had no power to sell save and except by virtue of the power of attorney given him so to do.

For the reasons heretofore mentioned, the judgment against the bank is reversed, and as to defendant Wilson the same is affirmed.

Conrey, P. J., and James J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on June 25, 1915.