THE STATE ex rel. COLUMBIA TELEPHONE COMPANY, Appellant, v. JOHN M. ATKINSON et al., Members of Public Service Commission.

Division Two, May 29, 1917.*

1. **TELEPHONE COMPANY: Valuation of Properties.** Where the Public Service Commission found the rates as fixed by the telephone company to be reasonable and overruled the complaints that they were excessive, the company cannot complain that the valuation of the company's plant as fixed by the commission "for the purpose of determining reasonable and just rates" was unjust, in that it failed to take into consideration all the factors that should have been considered, and the court will not on the company's appeal investigate the evidence and determine whether or not such valuation was correct. If no present relief is sought which in any manner can be affected by the valuation fixed by the commission, there is no sufficient reason why the court should review the valuation.

2. ————: ————: **Conclusive for All Time.** The valuation of a telephone plant as fixed by the Public Service Commission is not conclusive for all time. If that were the meaning of section 101 of the Public Service Act it would be unconstitutional, since the Legislature cannot prescribe what shall be conclusive evidence. So the part of the section that provides that the facts found by

---

*NOTE.—Opinion filed April 10, 1917; motion for rehearing filed; motion overruled and opinion filed May 29, 1917.

the commission on the first valuation cannot be controverted except by a showing of a change in condition must be held to be inconsistent with and subservient to the further provision for a reexamination and revaluation. [Opinion on rehearing.]

3. ———: Installation Charge. A telephone installation charge of three dollars, required to be paid in advance, for which if the service is continued until the end of a year the subscriber is given credit on the last two months, and if the service is discontinued before the end of the year the deposit is forfeited as being in the nature of an additional charge for short-term service, is unreasonable.

4. ———: ———: Pledge Without Interest. Said installation charge, paid in advance, is an addition to the working capital of the company on which it pays no interest, and ignores the principle that a pledgee is always liable to the pledgor for the profit which he receives from the thing pledged.

5. ———: Removal Charge. A rule of a telephone company by which a removal charge of fifty cents is made where there is no such removal of the telephone, but the only change is that one tenant moves out and another moves in, without additional expense to the company except the small matter of book-keeping, is unreasonable.

6. ———: Extra Charge to Rooming Houses. Where the evidence is that there is a separate directory gotten up by students, in which are listed the names of three thousand students who are not telephone subscribers, and in which appear opposite the proper telephone numbers the names of most of them, and that students require telephone service to go with what they pay for room rent, an additional charge of fifty cents per month for the use of a telephone in a private residence in which one or more roomers or boarders are kept, is not unreasonable.

Appeal from Cole Circuit Court.—*Hon. J. G. Slate*, Judge.

REVERSED AND REMANDED (*with directions*).

*McBaine & Clark* and *W. M. Williams* for appellant; *Hugh Dabbs* of counsel.

(1) This court will examine, consider, and weigh the evidence, and reach its own conclusions and findings of fact upon the testimony in the record, as in equity cases; and, in effect, try the case *de novo*. Railroad v. Public Service Comm., 266 Mo. 333. (2) The Public Service Commission "has made an omnibus allowance,

without itemization in findings, opinion, or order," and, if it can be said that this is a compliance with the statutory requirement of "findings of fact in writing," it certainly cannot be of material aid to the court in making its findings upon this record. Gas & Elec. Co. v. Barker, 231 Fed. 331; Sec. 101, Public Service Com. Act., Laws 1913, p. 634-5; People v. Wilcox, 210 N. Y. 479. (3) The owner of property devoted to public use is entitled to a fair and reasonable return upon his entire investment used in serving the public. Such valuations should not be so low or the investments looked upon with such disfavor as to hamper enterprise or discourage investments of private capital in the service of the public. No public interest requires the omission of any element of value from the allowance upon which a public service company may make a fair return. The valuation put upon the Columbia Telephone property by the Public Service Commission was entirely too low, and should not be permitted to stand. Knoxville v. Water Co., 212 U. S. 18; Railroad v. Railroad Comm., 136 Wis. 146; Printing Co. v. Gas & Elec. Co., 4 Wis. R. C. R. 648. (4) It is well settled, in valuing public service properties, that a fair allowance must be made for "going value" or "cost of development." The Commission in this case made no definite allowance for "going value" or "cost of development." Omaha v. Water Co., 218 U. S. 180; Gas Light Co. v. Cedar Rapids, 223 U. S. 665; Minnesota Rate Case, 184 Fed. 765, 230 U. S. 352; Wilcox v. Gas Co., 212 U. S. 17; Express Co. v. Ohio, 166 U. S. 185; Waterworks Co. v. Kansas City, 62 Fed. 853; Trust Co. v. Railroad, 90 Fed. 683; Waterworks v. San Francisco, 124 Fed. 574. (5) All the authorities are to the effect that a fair allowance should be made for cash working capital. While the Commission referred to it in its opinion, no definite allowance was made for such capital. Whitten, Valuation of Public Service Corporations, p. 287; Floy, Valuation of Public Utility Properties, p. 125; Tel. & Tel. Co. v. Louisville, 187 Fed. 646; Printing Co. v. Gas & Elec. Co., 4 Wis. R. C. R. 501; Cunningham v. Chippewa W. L. Co., 5 Wis. R. C. R. 316; Gas Co. v. New York, 157 Fed. 849; Weaver v. Light Co., 1 Mo. P. S. C. 165; In re

Missouri Southern Ry. Co., P. U. R. 1916 C. 645; Spring-field v. Gas & Elec. Co., P. U. R. 1916 C. 381. (6) If, from the cost of the property, there is to be deducted the actual depreciation, then there must be added to the depreciated value of the property the reserve fund set apart to make good such depreciation. Wilcox v. Gas Co., 212 U. S. 17; Knoxville v. Water Co., 212 U. S. 1; Murray v. Public Service Comm., 150 Pac. 47; Whitten, Valuation of Public Service Corporations, 350. (7) The rule of the Columbia Telephone Co., requiring an advance payment of three dollars to be credited on the last month or months of the year's subscription is reasonable and just. The instal-lation of a telephone for less than a year's subscription entails a loss to the company. The order of the com-mission, permitting an advance collection for three months, is no fairer to the subscriber than the company's rule, and does not furnish adequate protection to the company. Similar rules to that of the Columbia Telephone Co. have been approved by other Public Service Commissions. 1 Pond, Public Utilities, 219. (8) Reasonable classifica-tion of subscribers for telephone service is entirely prop-er and may be made by the company. The separate classification by the Columbia company of rooming houses with a rate between private residences and business houses is proper under the conditions shown to exist in that locality.

*Alex. Z. Patterson* and *James D. Lindsay* for respond-ents; *N. T. Gentry* of counsel.

Counsel for appellant complain that the valuation on the Columbia Telephone plant was fixed too low by the commission; and they insist that the Supreme Court should review the case and decide that the weight of the testimony on that subject is in their favor. Even if this court will review the testimony on that subject, this court will certainly give to the finding of the commission as much weight as the finding of a trial court, when there

is some testimony to support it. After a long and patient investigation, after numerous continuances and the introduction of a flood of evidence (which to say the least was contradictory), the commission made its finding. Appellant contends that the additional sum of fifty cents per month from each boarding house and rooming house is a reasonable charge, although counsel for appellant do not cite us to a single town or city where such a practice has been adopted. It is claimed by appellant that the telephone rates in Columbia are not too high, because of the large number of students in Columbia attending the State University, yet appellant then wants to add to the already high rate an additional charge of fifty cents per month for houses where students room or take their meals. Such extra charge is not made in other cities and towns of our State, nor in other college towns, nor in the capital city, nor in any of the cities where state institutions are located. It is a charge peculiar to the Columbia Telephone Company. The intimation that students of the University use the telephones so much more than the students of the other college towns of our state and nation, and so much more than any other kind of boarders in other towns, can hardly be taken seriously. Perhaps the most unreasonable charge about which complaint is made is the so-called "Advance Payment," or as stated to other patrons the "Installation Fee" or "Deposit Fee," sometimes called the "Removal Fee." If the testimony can be believed, the telephone company has one rule for one person and another rule for another person. Some persons were charged one dollar, some one dollar and a half, some two dollars, and the easy ones three dollars. All of the new subscribers of the telephone company pay some sort of a charge, which is also unknown to other Missouri towns. It is now charged by the telephone company that a fee of three dollars, as an advance payment, is reasonable, that it can make no money by renting a phone for less than one year. This is an argument that may well be addressed to one who is contemplating going into the telephone business; but it is no reason for requiring one person to pay one sum as rent for a telephone

State ex rel. v. Atkinson.

for nine months, and another person to pay another sum for the same length of time. Under our present law such discrimination is prohibited. Besides the telephone company is receiving pay for services never rendered.

WHITE, C.—This proceeding was instituted on the 20th day of May, 1915, in the circuit court of Cole County, to review on *certiorari* the action of respondents in two cases, one of which was known as case No. 69, entitled "J. Ben Sims v. Columbia Telephone Company;" the other was known as No. 282, entitled "In the matter of the Valuation of the Telephone Exchange Rural Lines and Long Distance Toll Lines of the Columbia Telephone Company." These cases were consolidated and tried as one before the Public Service Commission.

Case No. 69 filed before the commission was sworn to by J. Ben Sims and signed by thirty-one other residents of the city of Columbia, making complaints against the Telephone Company, as follows:

(1) That the rates of the Columbia Telephone Company were excessive as compared with other university towns and towns of like population;

(2) That where one or more boarders or roomers were in the house of a subscriber an additional charge was made;

(3) That where an extension telephone was put in by the company an additional charge of fifty cents per month was made;

(4) That the Telephone Company should furnish free all telephones used by the city and the public schools, which it failed to do;

(5) (a) That a charge was made for installing telephones; (b) that a charge was made to the residence in which a telephone was installed when one tenant moved out and another moved in;

(6) That the Telephone Company refused to place telephones lower than three and a half feet from the floor for the reason that if telephone users could sit down they would use the telephone more than if they had to stand up.

Case No. 282, filed before the commission, was signed by forty-nine citizens of Columbia requesting the Public Service Commission to investigate the Columbia Telephone plant and place a valuation thereon, on the ground that the petitioners believe the rates charged in the city of Columbia were too high; a reduction of rates was asked. Case No. 282 will be treated as a part of the complaint (1) in case 69.

After hearing the cases, the commission found against the complainants in favor of the Telephone Company as to complaints (1), (3), (4) and (6). The commission found against the company on complaint (2), holding that the rule of the company, classifying as boarding-houses private residences having two or more boarders or roomers and charging them an additional rate of fifty cents per month, was an unreasonable discrimination; the commission also found against the company on complaint (5), (a) and (b), holding (a) that the installation charge was unreasonable. This charge was three dollars, which the company required to be deposited on the installation ot the telephone. (b) The commission ordered the discontinuance of the charge of fifty cents for making the change, where one tenant moved out and another moved in and used the same telephone.

On account of the rulings against the company in the matters mentioned, it filed its petition for review in the circuit court. The circuit court upon hearing the case affirmed the orders of the commission in all respects. From this order of the circuit court the petitioner, the telephone company, appealed to this court. In addition to the rulings of the commission against the company in matters suggested on complaints (2), and (5) (a) and (b), the company complained in its motion for rehearing before the commission and in its petition for review and in its motion for new trial in the circuit court, that the rulings of the commission, in its valuation of the property, were erroneous.

I. A large volume of evidence was taken before the commission regarding the value of the company's plant,

and upon the hearing that value was fixed at the sum of $182,000, "for the purpose of determining reasonable and just rates." Although the commission decided in favor of the company that the rates fixed by it for the city of Columbia were reasonable and just, and dismissed the complaint as to that, the appellant assigns as error the action of the circuit court in affirming that ruling in so far as it assessed the value of the plant, and now asks the court to review the matter of valuation and determine as an independent proposition whether the value fixed was reasonable, and whether the commission took into consideration in fixing such value all the factors which should have been considered.

*Valuation of Property.*

The complaints ruled against the company, (2) and (5), are mere matters of regulation and classification and must be determined without regard to the value of the company's property. The only purpose of ascertaining the value, as mentioned in the complaint in No. 282, was to find out whether the rates were reasonable and to secure a reduction of rates. While the statute, authorizing the commission to ascertain the value of the property of such companies, stands by itself as a separate provision of the Public Service Commission Act, we cannot see that the commission would be required, as a mere matter of curiosity, independent of any purpose it might serve, to go to the labor and expense of ascertaining the value of any such property. Such action, when taken by the commission, is for some definite purpose; usually for the purpose of fixing rates, although it might be done when the commission has before it for consideration the propriety of allowing the issuance of stocks and bonds or of any other acts of a corporation over which the commission has supervision. The commission found the rates reasonable as fixed by the company and this court can see no good purpose which can be served by inquiring into the facts or grounds upon which the conclusion was reached. The company has no right to complain; the ultimate finding on the point at issue was favorable to it, although some subordinate facts were found against its contention.

II.   Appellant, however, bases its right to have this
matter   reviewed upon an apprehension of future
trouble that the value so fixed might give it.

**Conclusive Effect of Valuation.** It calls attention to the language of the Public Service Commission Act, section 101, p. 635, Laws 1913:

"The findings of the commission so made and filed, when properly certified under the seal of the commission, shall be admissible in evidence in any action, proceeding or hearing before the commission *or any court* in which the commission, the *State or any officer, department or institution thereof, or any county, city, municipality or other body politic* and the telegraph corporation or telephone corporation affected may be interested whether arising under the provisions of this act *or otherwise,* and such findings when so introduced shall be *conclusive evidence* of the *facts therein stated* as of the date therein stated under conditions then existing."

The very terms and provisions of section 101 make it fairly plain that there is no sufficient reason why this court should review the matter of the valuation fixed by the Public Service Commission. The more so since no present relief whatever is sought which in any manner can be affected by such valuation. The question of the correctness of this valuation is, upon the facts before us, a mere moot question. When the timely raised question of the constitutionality of that part of section 101, and the question of its continuously conclusive effect upon valuations fixed by the commission, shall come before us as live questions in a pending case, we will examine them.

III.   Complaint (5) relates (a) to an installation charge of three dollars; (b) to an alleged removal charge of fifty cents. These charges were decided by the commission to be unreasonable. The first (a)

**Installation and Removal Charges.** is called an installation fee, but appellant's counsel in their brief insist that it is not an installation fee, but is merely a cash deposit required to secure the payment of bills. If the service is continued until the end of the year the sub-

scriber is given credit for the amount on the last two months of the year. If service is discontinued before the end of the year the deposit is forfeited as being in the nature of an additional charge for short-time service. It is, therefore, merely a pledge which the subscriber puts up to secure his payments. The company by requiring this advance payment secures additional working capital on which it pays no interest. Whether that is the purpose of the requirement or not, that is the effect. It disregards the principle that a pledgee is always liable to the pledgor for the profit which he receives from the thing pledged. [Houston v. Holliday, 5 Am. Dec. (N. C.) 522; Gilson v. Martin, 49 Vt. 474; Hunsaker v. Sturgis, 29 Cal. 142; Geron v. Geron, 50 Am. Dec. 143.] In giving credit for this amount at the end of the year it seems that the regulation does not add interest to the amount so credited and used by the company for the year. The commission in passing upon this complaint held that the company had a right to adopt reasonable regulations to secure the payment for service, but also held that it was unusual to charge extra for short-time service and that this regulation was unreasonable. In this, it is the opinion of the court that the commission was right. The commission suggested that the company might, if it chose, require of any subscriber three months' payment in advance for service, which we think was a very liberal provision for the company. The commission has not attempted to make any rule but suggests one which the company might make.

The other part of this complaint, (b), relating to the rule of the company by which a removal charge of fifty cents is made where there is no such removal of the telephone, but simply where one tenant moves out and another moves in, without additional expense to the company, except the small matter of book-keeping, is also unreasonable; and the finding of the commission in that respect was correct.

IV. Complaint (2) was on account of an additional charge of fifty cents per month for use of telephones in private residences where they kept one or more
Charges to
Rooming
Houses.
roomers or boarders. This does not apply to fraternity houses and clubs which paid the business rate. The commission held that such charge was unreasonable.

The reason for this additional charge appears in the use of the telephone by students. The evidence shows that every year the students publish a directory containing an alphabetical list of the faculty and the students, with a telephone number opposite the names of the greater number of them. The directory for 1913-14 contains about three thousand names, most of which are listed against telephone numbers, and a majority of these names are not listed in the company's directory as telephone subscribers. A majority of the telephone numbers listed in the books have two or more names entered against them. It appears, too, from the evidence, that the number of calls in Columbia is much greater per station than in other cities of like size, probably owing to the unusual use of the telephones by students.

It is perfectly apparent that the use of this directory gives the person whose name is listed against a number the same telephone service and accessibility to callers as those subscribers have whose names are listed in the company's directory. The evidence does not show what charge, if any, is made for each additional name to a telephone number. But these roomers receive the same service as the regular subscribers and pay nothing for it *to the company*. Various legal remedies might suggest themselves to the company whereby they could prevent the use of their telephone numbers in such a directory except as against the names of subscribers, or could exact pay for such use. The company has resorted to none of these, but has simply adopted a regulation by which it could charge the keeper of a boarding-house something for such additional service.

The commission in sustaining the complaints on this point quotes some testimony from Mr. Hudson, manager of the company, indicating that the use of the telephone by roomers has nothing to do with the charge, but that the charge is made because a rooming-house telephone is used more by the proprietor than an ordinary residence telephone.   However, it is quite apparent from all the evidence that the reason for this extra charge is the extraordinary use of the telephone made by the roomers.

Doubtless the students were innocent of any wrong intention in the matter, because it is suggested by appellant that the students required telephone service to go with what they paid for room rent; that it was difficult to rent rooms without telephone service, and owners of private residences who rented rooms to students made such service an additional incentive to get student roomers.   It is probably because the company realized the students paid for this service in their room rent, that it endeavored to place the extra burden where it belonged—upon those who rented rooms to them.   Telephone companies may be excused for making more or less arbitrary rate classifications, because of the difficulty of measuring telephone service, and because it is a matter of common knowledge that many persons who are not subscribers use telephones, and at times must do so in order that subscribers may get the full benefit of the service.   It is the opinion of this court that the regulation of the company in that regard was quite reasonable and that the ruling of the commission upon that point was erroneous.

The judgment of the circuit court is reversed and the cause remanded with directions to set aside order number two of the commission relating to extra compensation for telephone service to rooming houses, and to affirm the orders of the commission in all other respects.   *Roy, C.,* concurs.

PER CURIAM.—The foregoing opinion by WHITE, C., is adopted as the opinion of the court.   All of the judges concur.

## ON MOTION FOR REHEARING.

WHITE, C.—In its motion for rehearing and suggestions in support of the same the appellant quotes that part of Section 101 of the Public Service Commission Act quoted in Paragraph 2 of the opinion, with the following additional clause: "And such facts can only be controverted by showing a subsequent change in conditions bearing upon the facts therein determined."

Conclusiveness of Valuation.

Appellant argues that under this law as it reads, the valuation of $182,000, as fixed by the commission, is continuously conclusive and "we, of course, will be bound for all time to come by that valuation, as of that date;" it stands with the force and effect of a judgment which would cause appellant future embarrassment and loss, if the value is too low, and therefore, it is insisted, it is not a moot question presented, but should be passed upon.

Is the section susceptible of a construction which would avoid that result? It provides that: "The commission may from time to time cause further hearings and investigations to be had for the purpose of making revaluations *or* ascertaining the value of any betterments, . . . and *may examine into all matters which may change, modify or affect any finding of fact previously made,* and may, at such time make findings of fact *supplementary to those* heretofore made." The section ends with this proviso: "that such findings at such supplemental hearings or investigations shall be considered in connection with and as a part of the original findings *except in so far as such supplemental findings shall change or modify* the findings made at the original hearing or investigation."

These provisions are clearly and squarely in conflict with the part of the section first quoted, to the effect that such original findings shall be conclusive evidence of the fact found and that "such facts can only be controverted by showing a subsequent change in condition."

Notice the disjunctive *"or"* is used in the clause authorizing further hearings for the purpose of *"making revaluations, or* ascertaining the value of any betterments."  That is, revaluations may be made with or without regard to betterments or changes.

Also notice the wording of the next following provision, "and may examine into *all matters* which may *change,* modify or affect any finding of fact previously made and *may* at such time make findings of fact supplementary," etc.  That is, the commission may make supplemental findings, but it is not obliged to do so; may confine itself to such "matters as may change," etc., the findings previously made.

Then by the proviso quoted "such findings," made at the supplemental hearing or investigation, shall be considered in connection with and as "a part of the original findings, *except in so far as such supplemental findings shall change or modify* the findings" previously made. If that means anything it means that the findings at such supplemental hearings shall not be considered as a part of the original findings, so far as the new findings *change* or *modify* the original, but shall be new, original, and independent findings.  That is to say, so far as said supplemental findings relate to betterments, etc., they are added to and become a part of the original finding, but in so far as they *change* or *modify* the original findings, they replace those original findings.

To summarize: The act provides for *reexamination* and *revaluation* of the property *as it was* at the first examination, as well as for the purpose of valuing betterments or changes.  This is inconsistent with the provision that the facts first found cannot be controverted except by showing a change of condition.  It provides that on a subsequent investigation, the commission "may examine any matters" (whether examined before or not) "which may change, modify or affect any finding of fact previously made," and these may *replace* the original findings. This is inconsistent with the provision that such previous findings shall be conclusive of the facts stated. They could not be conclusive at any time or place.

If that part of this Section 101 first quoted be given its literal meaning, dissociated from other parts of the section, as claimed for it and feared by appellant, the findings of the commission would be "*conclusive evidence of the facts therein stated*" regarding valuation, in any proceeding, "before the commission or any court," between the commission and many parties mentioned not parties to this proceeding.

In that case it would be clearly unconstitutional. The Legislature may establish rules of evidence and may provide that proof of a certain character shall be prima-facie evidence of a fact sought to be established, but it is clearly beyond the power of a Legislature to prescribe what shall be conclusive evidence of any fact. [Abbott v. Lindenbower, 42 Mo. 162, l. c. 166; Roth v. Gabbert, 123 Mo. 21, l. c. 28, 31; Railway Co. v. Simonson, 64 Kan. 802; Railway v. Payne, 33 Ark. 816; United States v. Klein, 13 Wallace (80 U. S.), 128, l. c. 146-7; Phillips v. Byrd, 143 Pac. 684; Chicago, M. & St. P. Ry. Co. v. Minnesota, 134 U. S. 418, l. c. 456; White v. Flynn, 23 Ind. 46; Corbin v. Hill, 21 Iowa, 70; Yazoo & Miss. V. Ry. v. Bent & Co., 47 So. (Miss.) 805; Cooley on Const. Lim. (7th Ed.), 526.] Under these authorities the Legislature cannot make any evidence conclusive which is not already so, "in and of itself," by virtue of its own force, because it would invade the province of the court.

In interpreting a statute the courts give it effect according to its terms, if possible to do so. If an enactment "is fairly susceptible of two or more constructions, that interpretation will be adopted which will avoid the effect of unconstitutionality, even though it may be necessary, for this purpose, to disregard the more usual or apparent import of the language employed." [Dorrance v. Dorrance, 242 Mo. l. c. 652.]

We think the section should be given effect by giving it an interpretation which is consistent with its constitutionality. The findings of which the appellant complains are not "continuously conclusive." and that part of the act which appellant quotes must give way to the more

rational interpretation and the evident purpose of the statute as expressed in its other parts.

The motion for rehearing is overruled.

*Roy, C.,* concurs.

PER CURIAM—The foregoing opinion by WHITE, C., on motion for rehearing, is adopted as the opinion of the court. All the judges concur.