[Civ. No. 8978.   Second Appellate District, Division Two.—January 10, 1935.]

FRANK McCOY, Respondent, v. NORTHWESTERN CASUALTY AND SURETY COMPANY et al., Appellants.

· Kidd, Schell & Delamer for Appellants.

Barry & Boehler for Respondent.

WILLIS, J., *pro tem.*—The action herein is for conversion of certain corporate stock, the cause having been submitted to the trial court on the pleadings and a written stipulation of facts. No findings, therefore, being required, the stipulations being deemed in law to constitute the findings, the court's conclusion and order for judgment in favor of plaintiff, respondent herein, was entered on the minutes, and a judgment was entered thereon from which this appeal is taken, the record being brought here by a bill of exceptions. No brief has been filed by respondent.

On respondent's application, appellant Northwestern Casualty and Surety Company (hereinafter called "company") furnished a stay bond in the sum of $10,582.70, in a case appealed by respondent from a judgment for money entered in the Superior Court of Los Angeles County. As collateral security to protect the company from liability for loss or damages on account of such bond respondent delivered to the company 200 shares of common stock of Acme Fire Insurance Company of the then value of $10,000 and of which he was the owner. This transaction was conducted by respondent and one Channing Follette, since deceased, who was the duly appointed attorney-in-fact of the company. By the written collateral pledge agreement, dated September 25, 1928, the company was given the right to retain said stock until its liability on the bond had ceased or terminated, with power to sell, assign and deliver the stock without notice at broker's board, public or private sale, and to appropriate the proceeds to protect itself against any loss on account of said bond. Shortly thereafter the Acme Fire Insurance Company agreed upon a merger with Pacific American Fire Insurance Company, and, with the approval of the corporation commissioner of California, the stock of the former company was to be delivered into an escrow, wherein each two shares of its stock were to be exchanged for $39 cash and one share of stock issued by the latter company, if and when more than seventy-five per cent of the issued stock of the former company had been delivered

into such escrow. Such contingency having arisen, the exchange was made; Follette, being in possession of respondent's stock as agent of the company, on December 11, 1928, delivered the same into such escrow, but did so in the guise of attorney-in-fact of Seaboard Surety Corporation, another bonding company of which he was likewise attorney-in-fact. On December 28, 1928, the escrow agent delivered to Follette, as agent of Seaboard Surety Corporation, a check for $3,900, payable to the latter company and a certificate for 100 shares of stock of Pacific American Fire Insurance Company issued in the name of Seaboard Surety Corporation. Follette cashed the check and appropriated the money to his private uses. The stock was later delivered into the possession of Seaboard Surety Corporation. This escrow transaction was accomplished without the knowledge of respondent or of the officers of Seaboard Surety Corporation, or of appellants herein, none of whom had actual knowledge thereof prior to July 5, 1931. The value of the 200 shares of Acme Fire Insurance Company stock on December 11, 1928, was $47 per share, or $9,400.

On July 5, 1931, the judgment from which respondent had appealed was affirmed and the company was compelled to pay the amount thereof, which it did on August 17, 1931, in the sum of $6,346.38. On December 2, 1931, on demand of the company, the Seaboard Surety Corporation assigned, transferred and delivered to it the 100 shares of stock theretofore issued to said Seaboard Surety Corporation by Pacific American Fire Insurance Company, and the stock was thereafter registered on the books of the latter company in the name of appellant Northwestern Casualty and Surety Company. Respondent has never paid or tendered to the latter company the said sum of $6,346.38 or any part thereof, but the company declares its willingness and ability to transfer to respondent the 100 shares of Pacific American Fire Insurance Company stock upon receipt from him of the difference between the sums of $6,346.38 and $3,900.

In its minute order for judgment the trial court incorporated its conclusions of law drawn from the stipulated facts, as follows: ''The acts of Follette amounted, in effect, to a sale of pledged property without authorization, and consequently amounted to a conversion, which entitled the plaintiff to recover from the defendants the market value

of the stock as of the date of conversion, December 11, 1928." With this conclusion we cannot agree. Nothing in the stipulated facts furnishes proof of the elements which constitute a sale. The transaction was in the nature of an exchange, which was in the ordinary course of corporation mergers and was authorized by the terms of the agreement of pledge above recited Having full authority to sell, assign and deliver the stock held as collateral, and to appropriate the proceeds to protect itself against any loss on the bond, the company was not guilty of conversion by reason of the acts of its agent in effecting the exchange of the stock for cash and other stock of presumably equivalent value. In so doing there was no "unwarranted interference by defendant with the dominion over the property of the plaintiff from which injury to the latter results", as has been held to constitute the foundation of the action of conversion. (*Poggi* v. *Scott,* 167 Cal. 372 [139 Pac. 815, 51 L. R. A. (N. S.) 925]; *Edwards* v. *Jenkins,* 214 Cal. 713 [7 Pac. (2d) 702].) ■ For any lack of diligence or good faith in the performance of its trust as pledgee the company would be liable to respondent only when the latter's liability to the company was discharged or the company released from its liability on the bond. (*Hyatt* v. *Argenti,* 3 Cal. 151; *Lem* v. *Wilson,* 27 Cal. App. 512 [150 Pac. 641]; *Tracy* v. *Stock Assurance Bureau,* 132 Cal. App. 573 [23 Pac. (2d) 41].)

■ Under the facts in this case respondent was not entitled to possession of the stock pledged by him at the time of the alleged conversion or when he commenced this action. It is the general rule, announced by text-writers and by our courts, that in actions of conversion the plaintiff must prove ownership with the right of possession, or actual possession at the time of the alleged conversion. (*General Motors A. Corp.* v. *Dallas,* 198 Cal. 365 [245 Pac. 184]; *Covington* v. *Grant,* 82 Cal. App. 749 [256 Pac. 213]; *Winne* v. *Ford,* 88 Cal. App. 308 [263 Pac. 545]; *DePuy* v. *Shay,* 127 Cal. App. 476 [16 Pac. (2d) 158].) ■ Respondent, having pledged his stock to the company as collateral security against loss by the company on account of the stay bond, could not put the company in default for failure to redeliver such stock until he had satisfied his debt to the company, created when the company paid respondent's judgment debt; and no con-

version could occur until such debt had been satisfied and demand made for return of the stock, followed by a refusal so to do. (*Scrivner* v. *Woodward*, 139 Cal. 314, 316 [73 Pac. 863] ; *Thompson* v. *Toland*, 48 Cal. 99, 116; *Colton* v. *Oakland Bank of Savings*, 137 Cal. 376, 382 [70 Pac. 225] ; *Williams* v. *Ashe*, 111 Cal. 180, 185, 186 [43 Pac. 595] ; *Bell* v. *Bank of California*, 153 Cal. 234, 238 [94 Pac. 889].)

For the reasons above given the judgment should be reversed, and it is so ordered.

Stephens, P. J., and Crail, J., concurred.